**Marshall JONES, Plaintiff-Appellant,**

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY CO., Defendant-Appellee.**

**No. 81–5475.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1983.

Decided Feb. 14, 1984.

Louis P. Chiozza, Jr., argued, Memphis, Tenn., for plaintiff-appellant.

Charles Y. Caldwell, III, Thomas R. Price, Jere B. Fones, argued, Memphis, Tenn., for defendant-appellee.

Before MERRITT and JONES, Circuit Judges, and JOINER, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Appellant, Marshall Jones, challenges the district court judgment denying his request to set aside an arbitration award. The award was rendered by a Public Law Board which convened pursuant to 45 U.S.C. § 153 for the purpose of settling labor disputes that arise in the railroad industry. For the reasons articulated below, we find the award to be inappropriate and reverse the judgment below.

On August 15, 1977, Jones was the engineer working at the Yale Yard, Memphis Terminal. He and his crew were pulling cars out of Track 7, heading south and were going to set one car into another track. Jones pulled his locomotive and one car through a switch, stopped and made a rev- erse movement shoving northward. At this time, the car next to Jones' locomotive derailed and the locomotive also derailed.

On August 31, 1977, the appellee, St. Louis-San Francisco Railway Company conducted an on-the-property investigation in Memphis in connection with the August 15, 1977 derailment. Jones attended the investigation along with his chosen representative, the general chairman of the Brotherhood of Locomotive Engineers (BLE), as well as his witnesses. The proceedings were transcribed and a copy of the transcript was provided to Jones and his BLE representative. Before the record was transcribed, however, Jones was discharged for his responsibility in connection with the derailment. The letter, dated September 2, 1977, informed him of his termination and set out specific transportation department rules which Jones was found to have violated.

Following his discharge, Jones and Mr. Dean, the BLE representative, sought to adjust his grievance in accordance with the relevant provisions of the collective bargaining agreement. In addition, they sought to make corrections in the transcript of the on-the-property investigation. No amendment was procured, however, and the transcript which was before the district court contains the same alleged errors.

Jones' case was docketed with Public Law Board No. 1789 (the Board) for a hearing concerning his alleged wrongful discharge. The Board was established pursuant to an agreement between the railway company and the BLE which was authorized under the provisions of 45 U.S.C. § 153 Second, for the resolution of grievances arising in the railroad industry.[1] The agreement pro-

---

\* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The agreement provides as follows:
   For the purpose of establishing a Special Board of Adjustment under the Railway Labor Act, as amended, including Public Law 89–456,
   IT IS AGREED:

(A) There shall be established a Special Board of Adjustment which shall be known as St. Louis-San Francisco Railway Company, Public Law Board No. [to be designed],

(B) The Board shall have jurisdiction over claims and grievances, submitted to it under agreement, arising out of the interpretation or application of agreements concerning rates of pay, rules or working conditions. Cases to be heard by the Board shall be only those on which decision has been rendered

vided for a Board comprised of three members: a railway partisan member, a BLE partisan member, and a neutral member. The agreement also provided that after a case has been heard, the Board shall make findings of fact and render an award within fifteen days of the hearing date.

The Board conducted a hearing on April 21, 1978, where the parties argued their positions and presented evidence that was not part of the on-the-property investigation. After the hearing, but prior to the rendering of a decision, the Railway partisan member was promoted to another position and the BLE partisan member retired. Neither of these two Board members had discussed the appellant's case with each other or with the neutral member. Substitute partisan members were appointed to the Board some time after July 1, 1978.

On June 13, 1979, the neutral board member, Mr. Zumas, prepared the award which denied appellant's claim for reinstatement, upon finding that there was sufficient evidence to support the carrier's termination of appellant's employment on the basis of his negligence and carelessness. Although the substitute partisan members were neither present at the hearing nor had they discussed the case with Mr. Zumas, the Railway Board member signed the award and the BLE Board member dissented. This award was rendered on June 13, 1979, approximately fourteen months after the April 21, 1978 hearing.

Between the time the Board heard the appellant's case and the time a decision was rendered, Jones contacted various state and local officials in an attempt to force the Board to comply with the fifteen-day time limit stated in the arbitration agreement for rendering the award. Only after numerous futile attempts by appellant to obtain compliance with this time limit did the Board issue an order finding the appellant's dismissal appropriate in light of his negligence in the derailment and his prior work record, which included seven prior dismissals.

■■■ Jones filed a civil action in federal district court alleging violations of his constitutional right to equal protection and due process and various violations of the Railway Labor Act.[2] He sought judicial review of the Board's award, to have the award set aside, and to have his job restored with all back pay and benefits. Alternatively, appellant requested a remand for a new Public Law Board hearing on the merits of his claim. After the Railway filed a motion for summary judgment, the court ruled as a matter of law that the alleged Railway Labor Act violations, 45 U.S.C. §§ 157, 158 and 159, pertained to procedural mediation and/or arbitration rules to be followed when a controversy is not settled. As such, these provisions were deemed inapplicable to the instant case since the issues had been resolved by a Public Law Board. The court also ruled that the appellant's efforts regarding the fifteen-day time limit for rendering decisions were merely inquiries—not objections to the Board's untimeliness in rendering this decision. In a subsequent ruling on the merits, the court held that the award was confined to matters within the Board's jurisdiction and that there was no evidence of fraud or corruption on the part of the Board members. Accordingly, the district court approved the Board's award and the plaintiff appealed.

## DISCUSSION

The Railway Labor Act provides that a carrier may agree with any group of em-

---

by the highest officer of the carrier designated to handle such claims or grievances....

2. Appellant sought an interlocutory appeal on the issue of whether the fifteen-day time limit was jurisdictional, however, the court denied his request. We conclude that the district court's refusal to certify this issue as a controlling question of law pursuant to 28 U.S.C. § 1292(b) was not an abuse of the court's discretion.

The appellant also contends that the court erred in its determination that 45 U.S.C. §§ 157 and 158 are inapplicable to this case. We affirm this portion of the judgment below. Finally, appellant challenges the Railway partisan member's participation in rendering the award as constituting fraud and corruption on the part of the Board members. We find no merit in this contention.

ployees to establish a board for the purpose of deciding disputes such as that presented in this case. Pursuant to 45 U.S.C. § 153 Second, the Railway and the BLE entered into an agreement establishing the Public Law Board to resolve disputes and claims that arise out of questions involving the interpretation and/or application of rules and working conditions. The issue regarding which employee was responsible for the locomotive derailment on September 2, 1977 was appropriately before the Board for resolution and, the Board ruled in favor of the Railway. The appellant sought judicial review of the award, and the district court affirmed.

■ The Supreme Court has limited the powers of appellate courts in reviewing arbitration awards in the railroad industry as follows:

> Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153 First (q).

*Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam), *reh'g denied*, 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979). In *Sheehan*, the Court reversed the lower court's ruling that due process was a ground for judicial review of awards rendered by the Adjustment Board. The Court expressly rejected a due process ground for review stating that:

> The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review *provid-*

*ed for in the Railway Labor Act.* Section 153 First(q) unequivocally states that the "findings and order of the [Adjustment Board] shall be conclusive on the parties" and may be set aside *only* for the three reasons specified therein. *We have time and again emphasized that this statutory language means just what it says.*

439 U.S. at 93, 99 S.Ct. at 402 (emphasis supplied). Thus, the basis for reviewing arbitration awards in this context is limited to only those grounds specified above. Accordingly, the district court, and now this Court, may only review the award in the instant case to determine whether the Board's actions fell within one of the above-enumerated categories. The district court specifically found that the Board had fully complied with the requirements of the Act, that it acted within the scope of its jurisdiction, and that there was no evidence of fraud on the record. The appellant alleges that the Board did not comply with the requirements of the Railway Labor Act and that it lost jurisdiction of this matter when it failed to decide the case within the fifteen-day time limit.

### a) Failure to Comply With Requirements of Railway Labor Act

Appellant contends that the district court erred in approving the award where two of the Board members were neither present at the hearing nor had they discussed the merits of his claim with either their predecessors or the then-present Board member. Consequently, he submits that he was materially prejudiced by the substitute members' participation in deciding his claim without the benefit of a hearing, or a transcript. While the appellant characterizes this error as constituting a due process violation, we recognize that such a claim cannot serve as a basis for judicial review in this context.[3]

**3.** The Seventh Circuit Court of Appeals held that a fourth judicially created ground for setting aside an award of the Adjustment Board existed when there was a denial of due process by an act of the Board. *Kotakis v. Elgin, Joliet & Eastern Railway Co.*, 520 F.2d 570, 574 (7th Cir.1975). *Accord Clayton v. Missouri Pacific Railway Co.*, 452 F.Supp. 107, 109 (M.D.La. 1978). This due process ground for judicial

review of Adjustment Board awards was adopted by the Tenth Circuit in *Union Pacific Railroad Co. v. Sheehan*, 576 F.2d 854, 855–56 (10th Cir.1978). However, the Supreme Court expressly denied this ground for judicial review in reversing the *Sheehan* decision. *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 93–94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

*Accord Union Pacific R. Co. v. Sheehan, supra; United Steelworkers of America v. Union R. Co.,* 648 F.2d 905, 911 (3rd Cir. 1981). The gravaman of this portion of the appellant's complaint, however, is that he attacks the award as being improper because the Board failed to comply with the requirements of the Railway Labor Act, namely 45 U.S.C. First(j) and (n).[4]

■ Subsection (j) of this chapter provides that "[p]arties may be heard either in person, by counsel, or by other representatives ... and the several divisions of the Adjustment Board shall give due notice of all hearings." Subsection (n) provides that "[a] majority vote of all members of the division of the Adjustment Board eligible to vote shall be competent to make an award." In determining whether the Board has complied with the provisions of the Railway Labor Act, we are mindful that where two or more statutes deal with the same subject, they are to be read *in pari materia* and harmonized, if possible. *Accord Erlenbaugh v. United States,* 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972); *United States v. Garcia,* 676 F.2d 1086, 1091 (5th Cir.1982); *Panama Canal Co. v. Anderson,* 312 F.2d 98, 100 (5th Cir.1963), *cert. denied,* 375 U.S. 832, 84 S.Ct. 43, 11 L.Ed.2d 63 (1963). This rule of statutory construction is based upon the premise that when Congress enacts a new statute, it is aware of all previously enacted statutes pertaining to the same subject. This rule applies with even greater strength when the two statutes at issue were enacted by the same legislative body, at the same time. *Erlenbaugh v. United States,* 409 U.S. at 244, 93 S.Ct. at 480.

■ In the instant case, both of these provisions were included in the original bill enacted by Congress. Since these two subsections pertain to matters relating to the Adjustment Boards, they should be taken *in pari materia* and construed together. *Accord Erlenbaugh v. United States,* 409 U.S. at 243, 93 S.Ct. at 480; *United States v. Stewart,* 311 U.S. 60, 64, 61 S.Ct. 102, 105, 85 L.Ed. 40 (1940). Viewing these two statutes together, we construe subsections (j) and (n) to entitle the parties who appear before the Board the right to be heard by a three member Board, a majority of whom must then agree in order to resolve the dispute at hand. The subsections must be read together because the failure to provide one necessarily abrogates the other. For example, if a party is not afforded a hearing before a majority of the panel members, a decision rendered by the majority would allow panel members who have not *heard* the parties' arguments to decide the merits of the case. This would effectively nullify the parties' right to a hearing as required by subsection (j). Thus, the majority panel members who *render* the award must necessarily be the same members who *hear* the merits of the case. This construction is the most logical legislative interpretation of Congress' intent with regard to the right to a hearing and the requirements for rendering a valid award. Therefore, the appellant's claim of failure to comply with the requirements of the Railway Labor Act pertains to the Board's failure to comply with these two subsections when read together. We conclude that these provisions of the Act require that in order to have a valid award, a majority of the Board must hear the parties and participate in the decision-making process before rendering an award. Since there is very little federal case law, however, regarding the ability of an arbitration board to render an award after some of the board members have been replaced, we will employ principles garnered from general common law notions pertain-

---

4. The Public Law Boards that are authorized pursuant to 45 U.S.C. § 153 Second serve as private alternative forums to the National Railroad Adjustment Boards. Several courts have held that the procedural requirements imposed in 45 U.S.C. § 153 First apply with like force to the special boards created in 45 U.S.C. § 153 Second. *See, e.g., Brotherhood, etc. v. St. Louis Southwestern Ry.,* 676 F.2d 132, 135 n. 2 (5th Cir.1982); *O'Neill v. Public Law Board No. 550,* 581 F.2d 692, 694–95 (7th Cir.1978); *Cole v. Erie Lackawanna Railway,* 541 F.2d 528, 532–33 (6th Cir.1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977). *See also* 1966 U.S.Code Cong. and Admin.News 2285, 2289.

<br/>

ing to the role of arbitrators as an aid in the construction of these two subsections.

As a general rule in the arbitration context, it is essential that there be unanimous participation by the arbitrators during the deliberations upon the award to be made. *Artie Shaw Presents, Inc. v. Snyder,* 362 N.Y.S.2d 158, 46 A.D.2d 867 (S.Ct.1974). Some courts have even held that arbitrators cannot conduct ex parte hearings or receive evidence unless it is done in the presence of the other arbitrators and the parties.[5] *Totem Marine Tug & Barge v. North American Towing,* 607 F.2d 649, 653 (5th Cir. 1979); *Katz v. Uvegi,* 18 Misc.2d 576, 583, 187 N.Y.S.2d 511, 518 (S.Ct.1959), *aff'd,* 11 A.D.2d 773, 205 N.Y.S.2d 972 (App.Div. 1960). Moreover, it is improper for the chairman to render a decision against either party without first consulting with the other designated arbitrators. *Simons v. New Syndicate, Inc.,* 152 N.Y.S.2d 236 (S.Ct. 1956).

Upon the voluntary withdrawal of an arbitrator, the majority of the arbitration board may proceed to render an award if the withdrawal occurs after the evidence has been received and after the arbitrators have consulted about their decision. *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emp. of America, A.F.L. v. Connecticut Co.,* 112 A.2d 501, 142 Conn. 186 (S.Ct. 1955). Some courts have held that, when a vacancy occurs on an arbitration board as a result of the death or resignation of an arbitrator, the arbitration board does not lose its power to resolve the dispute unless this is provided in the agreement. *Cf. In Re Cia de Navegacion Omsil and Hugo Neu*

*Corp.,* 359 F.Supp. 898, 899 (S.D.N.Y.1973). However, we construe this to mean that the vacancy must occur only with respect to a minority of the arbitrators. *In Re Stef Shipping Corp. and Norris Grain Co.,* 209 F.Supp. 249 (S.D.N.Y.), involved a three-member arbitration board which was selected to resolve a dispute pertaining to the use of a Liberian Flag vessel. After the arbitration hearings but prior to the issuance of an award, one of the arbitrators resigned. Thereafter, the two remaining arbitrators met and issued an award. Upon filing a motion with the district court to vacate the award, the petitioners argued that the arbitration board exceeded its authority by issuing an award after one member of the board had resigned. The court acknowledged the rule that "a determination of two of the three members of an arbitration panel is sufficient to constitute a valid award." 209 F.Supp. at 252, n. 5 *Accord Marine Transit Co. v. Dreyfus,* 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1931).[6] Accordingly, an award rendered by a majority of the arbitration board members who participated in the hearing was deemed not to have exceeded the board's authority.

Our reading of the common law doctrines and the case law pertaining to this issue is that although an arbitration board need not be impartial,[7] certain minimal procedural considerations must be afforded the parties, as Congress so required by enacting 45 U.S.C. § 153 First (j). Among these considerations, in order for there to be complete fairness to the litigants, we reason that Congress intended for

---

5. In *Grovner v. Georgia-Pacific Corp.,* 625 F.2d 1289 (5th Cir.1980) the court reasoned that arbitration need not follow all the "niceties" of the federal courts; it need provide only a fundamentally fair hearing. *Id.* at 1290.

6. The Supreme Court upheld an award rendered by four members of a five-member arbitration board in *Marine Transit Co. v. Dreyfus,* 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1931). The court reasoned that since the Federal Arbitration Act did not address the requirements that are necessary to have a valid decision, the question as to whether there must be unanimity in reaching a decision must be determined

by the arbitration agreement. 284 U.S. at 276, 52 S.Ct. at 169. Since the agreement did not require unanimity, the court determined the majority decision to be appropriate.

7. Under general due process notions, a party is entitled to an unprejudiced tribunal who is to afford him a fair and impartial decision. *See Hornsby v. Dobard,* 291 F.2d 483, 487 (5th Cir.1961). In the instant case, however, the Public Law Board is comprised of two partisan members and one neutral member. Thus, complete impartiality is not envisioned in this context.

all the arbitrators to *hear* the proof in evidence submitted by the parties and to consult with each other for the purpose of determining the proper resolution. Only after this procedure has been followed can a decision by the majority of the board[8] be deemed a valid award.

In the instant case, it is clear from the record that of the two substitute arbitrators, neither was present at the hearing nor did they have the opportunity to hear a tape or read a transcript of the proceedings. Moreover, it is also apparent that they did not discuss the award with each other or with the neutral board member who was present at the hearing. The effect of these events is that only one of the three-member arbitration board was present to give full consideration to the merits of appellant's claim. Thus, a majority of the board did not fully consider appellant's claims because they did not have an opportunity to participate in or consider the oral proceedings. Therefore, we conclude that the board failed to comply with the requirements of subsections (j) and (n) of the Act. As such, the board acted improperly by rendering an award that was not fully considered by a majority of its members in the manner required by the Act.

### b) Jurisdictional Claim

Appellant contends that since the arbitration agreement provides that the board shall render its award within fifteen days of the hearing date, the board lost jurisdiction of the case by violating the clear mandate of the agreement. By rendering its decision after the time for rendering an award had expired, the board exceeded its authority; therefore, the award must be rendered null and void.

The section of the arbitration agreement that gave rise to this contention provides: "Unless otherwise agreed by the partisan members, the Board shall, within 15 days following completion of the hearing on each case, make findings of facts and render an award on each case submitted to it. . . ." While the Railway Labor Act makes no reference to the time period for rendering awards, the Rules of the Federal Mediation and Conciliation Service, 29 C.F.R. § 1404, *et seq.* may provide some guidance in resolving this issue.

In regard to the conducting of arbitration hearings, 29 C.F.R. § 1404.14 requires that all proceedings conducted by the arbitrator are to be in conformity with the contractual obligations of the parties. Additionally, 29 C.F.R. § 1404.15(a) provides that "[a]rbitrators are encouraged to render awards not later than 60 days from the date of the closing of the record as determined by the arbitrator, unless otherwise agreed upon by the parties or specified by law."

The major objective of the Railway Labor Act was to avoid industrial strife by submitting disputes to the adjustment boards for arbitration. The special boards' jurisdiction is limited to the jurisdiction that is conferred thereupon by the agreement between the carrier and the union. *Switchmen's Union of North America v. Clinchfield Railroad Co.,* 310 F.Supp. 606, 610 (E.D.Tenn.1969). In *Hunting Alloys, Inc. v. United Steelworkers of America,* 623 F.2d 335 (4th Cir.1980), an arbitration agreement provided that the arbitration board "shall deliver its decision to both parties within 30 days after the end of the arbitration hearing." The agreement further provided that "no decision . . . shall be conclusive and binding upon the parties hereto unless delivered to both parties within the time specified above, or any extension thereof agreed to in writing by both parties." Although the parties agreed to extend the time period to sixty days after the hearing had ended, the award was untimely rendered. The court held that since there must be strict adherence to the essential terms of an arbitration agreement, *Brotherhood of Railway and Steamship Clerks v. Norfolk Southern Ry. Co.,* 143 F.2d 1015, 1017 (4th Cir.1944), and since the parties did not waive the time

---

**8.** The arbitration agreement in this action does not require unanimity of the board members before an award can be rendered. As such, we construe the general majority rule to govern the determination of a valid award.

limit provision of the agreement, the award was not binding upon the parties. Moreover, the court noted that this Circuit has held an untimely award to be void even when the agreement contained no language expressly rendering a late award void. *See, e.g. Detroit Coil Co. v. I.A.M. Lodge 82,* 594 F.2d 575, 581 (6th Cir.1979).

We construe the underlying rationale of these cases to be that the jurisdiction of the arbitration boards is limited to that which is conferred upon them by the arbitration agreement. Upon the expiration of the time limitation articulated in the agreement, the courts have taken a variety of approaches in determining whether the arbitrator's jurisdiction or authority has ended.

At common law, an award resulting from the arbitration of a commercial dispute was automatically invalid if rendered after the time specified in the agreement. *Local Union 560, International Brotherhood of Teamsters v. Anchor Motor Freight, Inc.,* 415 F.2d 220, 225 (3rd Cir.1968). *Accord Brandon v. Hines,* 439 A.2d 496, 510 (D.C. Ct.App.1981). In light of recent trends advocating the resolution of labor disputes, however, some courts have held that the authority of the arbitrator does not expire until after a *reasonable* time beyond the original time limitation provided in the agreement. 415 F.2d at 226. *Accord Tomczak v. Erie Insurance Exchange,* 268 F.Supp. 185, 189 (W.D.Pa.1967). *Cf. Hotel, Motel, Restaurant and Hi-Rise Employees, etc. v. Fontainbleau Hotel Corp.,* 423 F.Supp. 83, 84 (S.D.Fla.1976). The determination of reasonableness must be made giving consideration to the surrounding circumstances and any element of prejudice or harm either party suffers. *Id.* This rule of reasonableness developed to prohibit parties from waiting until an award is made and objecting to it on the basis of its untimeliness *only after* they receive an unfavorable decision.

We think that the general underlying federal labor policies provide some assistance in resolving this issue. These policies are served by requiring the parties to state in unequivocal language whether they intend for the arbitrators to lose their jurisdiction if they render a late award. *Local Union 560, International Brotherhood of Teamsters v. Anchor Motor Freight,* 415 F.2d at 226. If the parties do so, a late arbitration award is automatically invalidated. If they fail to make such provisions, "the authority of the arbitrator will expire after a reasonable time beyond the period originally fixed for the award has gone by." *Id.* In other instances when an award is rendered after the time limit provided for in the agreement, the arbitration board is deemed to have exceeded its power. *Accord Davis v. Ohio Barge Line, Inc.,* 697 F.2d 549, 555–56 (3d Cir.1983).

Since the agreement in the case at bar did not unequivocally state that jurisdiction would terminate on the sixteenth day, we believe that the fifteen-day time period was a goal set to encourage prompt determination of the arbitrable issue. Therefore, the jurisdiction of the arbitration board to resolve this dispute did not expire until a reasonable time thereafter. This does not mean, however, that the Board retained jurisdiction until whenever the award was rendered. Rather, we find that the sixth-day time period provided in 29 C.F.R. § 1404.15(a) is indicative of a reasonable time within which to render an award and that the 14 month delay here was clearly unreasonable. Thus, since the instant award was rendered after an inordinate period of time, we find that the board had long since lost jurisdiction to resolve this dispute.

Although some circuits have not taken such a clearly-defined position, we do not believe that those courts would reach a contrary result given the facts of this case. In *West Rock Lodge No. 2120 v. Geometric Tool Company,* 406 F.2d 284 (2d Cir.1968), the court determined that any time limitation imposed upon an arbitrator to render an award is merely directory, not mandatory. Consequently, a court should always have the discretion to uphold a late award when no objection to the delay has been

made prior to the rendition of the award or there is no showing that harm was caused by the delay. *Id.* at 286. *Accord International Union of Petroleum and Industrial Workers v. Standard Oil Co.,* 378 F.Supp. 1278 (C.D.Calif.1973). Upon determining that the parties did not suffer any harm as a result of the delay, the court concluded that the untimely award should be enforced.

In the instant case, the board rendered an award approximately fourteen months after the hearing while the appellant made numerous attempts to have a decision rendered in a timely manner. The district court concluded, however, that appellant's efforts to have the board issue a timely award were merely inquiries—not objections. Upon consideration of these events, we conclude that appellant's efforts are a clear indication that he objected to the arbitration board's failure to comply with requirements of the arbitration agreement in rendering a timely award. Thus, his efforts were definite objections to the board's failure to render its award within fifteen days. Additionally, he suffers harm as a result of this delay because the passage of time lessens his ability to establish that he was neither negligent nor reckless in operating the train if he has to rely upon the testimony of witnesses to the accident.

We conclude that the district court erred in approving this award because the board failed to comply with the requirements of the Act and, moreover, because the award was rendered so late that the board had lost jurisdiction over this matter. Accordingly, the judgment of the lower court is REVERSED and the case is REMANDED for a new hearing before the Public Law Board in a manner that is consistent with this opinion.