Dennis **SCHNEIDER,**
**Plaintiff-Appellant,**

v.

**SOUTHERN RAILWAY COMPANY,**
**Defendant-Appellee.**

**No. 86–5132.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1986.
Decided June 30, 1987.

Charles W.B. Fels, Ritchie and Fels, Knoxville, Tenn., for plaintiff-appellant.

Earl Layman, Knoxville, Tenn., Jeffrey S. Berlin, argued, Richardson, Berlin & Morvillo, Washington, D.C., for defendant-appellee.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This appeal arises from the plaintiff's discharge from employment with Southern Railway for falsifying an injury report. Following a Public Law Board No. 964 arbitration hearing, the discharge was upheld. Schneider challenged the Board's decision in federal district court contending that:

(1) Although he was notified of Southern's investigation, the notice was inadequate and the investigation itself was unfair, in contravention of the collective bargaining agreement;

(2) the Board's decision was baseless, without foundation in reason or fact; and

(3) due to unreasonable delay in rendering a decision, the Board lost jurisdiction to decide Schneider's case.

The district court rejected these contentions and granted Southern's motion for summary judgment. We affirm.

## I.

Schneider was employed for eleven years as a brakeman at Southern's Tennessee Division in Knoxville. On August 10, 1983, while working as a brakeman at Yalu Junction, Tennessee, he claimed to have slipped on some oil and fallen on the steps of a locomotive, bruising his knee. The crew's conductor prepared an accident report "Form 22" in accordance with Schneider's oral description of the accident. Schneider did not sign the report.

Upon arrival in North Carolina, Schneider was taken to a doctor. He was told that his knee was bruised, and that he should rest it for a couple of days. Although Schneider protested, the trainmaster insisted that Schneider leave the crew and return to Knoxville by automobile. In response to the trainmaster's questioning, Schneider said he would return to his ordinary work on the next trip.

Before the next trip, however, Schneider received written notice from the railroad that the accident was being investigated. The notice suggested that Schneider obtain representation and prepare to call witnesses in his behalf. A hearing was scheduled for August 15, 1983.

At the hearing Southern presented witnesses who testified that Schneider appeared to be limping the night *before* the accident; that there was no oil on the locomotive's step when Schneider's shift began; that the oil on the step was "new" oil, free from contaminants; that because the step was not located near any lubricated parts on the engine, the oil could not have leaked onto the step as a natural occurrence; that a container of new oil was missing from a locomotive coupled behind the engine in question; and that it was simply not normal for an experienced brakeman to mount an engine where Schneider claimed to have.

Schneider testified that he was climbing onto the engine in order to cross over to the other side when he slipped on the oil. He offered the testimony of only one witness who stated that Schneider had not been limping the night prior to the accident. At the conclusion of the hearing, Schneider affirmed that the investigation had been conducted in a fair and impartial manner, in accordance with the collective bargaining agreement. Shortly thereafter, Schneider was discharged for falsifying a personal injury report.

Unsuccessful in his internal appeals, Schneider appealed to Public Law Board No. 964. The Board is a special arbitration panel created by an agreement between Southern and the Union pursuant to the Railway Labor Act, 45 U.S.C. § 153, Second Paragraph. Following a nine-month delay, the Board rendered a decision upholding the discharge.

Thereafter, Schneider filed suit in federal district court. Granting summary judgment for Southern, the district court held that:

(1) Schneider had waived the alleged procedural defects in the investigation and hearing process by failing to raise them before the Public Law Board;

(2) the Board's decision was not wholly baseless and irrational; and

(3) the delay was not unreasonable and therefore the Board had not lost jurisdiction to decide the case.

## II.

■ It is well-established that parties to an arbitration may waive procedural defects by failing to bring such issues to the arbitrator's attention in time to allow the arbitrator an opportunity to cure the defects. *National Post Office Mailhandlers v. U.S. Postal Service*, 751 F.2d 834, 841 n. 4 (6th Cir.1985); *Order of Railway Conductors v. Clinchfield Railway Co.*, 407 F.2d 985, 988 (6th Cir.), *cert. denied*, 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969); *Brotherhood of Railway Airline & Steamship Clerks v. St. Louis Southwestern Railway*, 676 F.2d 132 (5th Cir.1982). In *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed.2d 54 (1952), the Supreme Court stated:

"[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."

*Id.* at 37, 73 S.Ct. at 69. Because Schneider failed to raise before the Public Law Board any issues concerning the adequacy of the notice he received from Southern and the fairness of the investigatory process, he waived these alleged procedural defects, and the district court correctly so held.

## III.

■ The standard for judicial review of arbitration decisions is "extremely limited." *Brotherhood Railway Carmen v. Norfolk & Western Railway*, 745 F.2d 370, 375 (6th Cir.1984). In *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.*, 415 F.2d 403 (5th Cir.1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), the court stated:

"In the arbitration context, an award 'without foundation in reason or fact' is equated with an award that exceeds the authority or jurisdiction on [sic] the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.... The requirement that the result of arbitration have 'foundation in reason or fact' means that the award must, in some logical way, be derived from the wording or purpose of the contract."

*Id.* at 411–12. Because of the policy favoring arbitration, this standard of review is much narrower than the "substantial evidence" standard. *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228 (5th Cir.1970); *Union Pacific Railway Co. v. Sheehan*, 439 U.S. 89, 93–94, 99 S.Ct. 399, 401–402, 58 L.Ed.2d 354 (1978) (per curiam) *reh'g denied*, 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979). In order to set aside the Board's decision, it would be necessary to determine that the decision was "wholly baseless and without foundation and reason." *Gunther v. San Diego & Arizona Eastern Railway*, 382 U.S. 257, 264, 86 S.Ct. 368, 372, 15 L.Ed.2d 308 (1965).

In reaching its decision, the Board considered all of the testimony given at the investigative hearing and determined that there was sufficient evidence to support Southern's decision to discharge Schneider for filing a false report. The Board con-

cluded that since Southern was not required to retain employees who falsify reports, the discharge did not violate the collective bargaining agreement.

In review of this decision, the district court found "an abundance of testimony by witnesses upon which the Board could base its decision." Accordingly, the court determined "that the Board's decision was not without foundation in reason or in fact." We cannot disagree with this conclusion.

## IV.

██ Finally, Schneider contends that the district court erred in failing to conclude that the Board's nine-month delay in rendering a decision was unreasonable and that, as a result thereof, the Board had lost its jurisdiction to decide this case. In support of this argument, Schneider relies upon this court's decision in *Jones v. St. Louis-San Francisco Railway Co.*, 728 F.2d 257 (6th Cir.1984).

In *Jones*, the agreement creating the Public Law Board established a 15-day limit for rendering decisions. This court determined that such a limit was not controlling. Instead, we recognized:

"In light of recent trends advocating the resolution of labor disputes ... some courts have held that the authority of the arbitrator does not expire until after a *reasonable* time beyond the original time limitation provided in the agreement."

728 F.2d at 265 (emphasis in original). To determine whether the 14-month delay at issue in *Jones* was unreasonable, we considered the 60-day limiting provision in 29 C.F.R. § 1404.15(a), which applies to the Federal Mediation and Conciliation Service. *Id.* We held that because the delay was indeed unreasonable, the Board lost its jurisdiction to decide the case.

In the case at bar, the original agreement between Southern and the Union established a 30-day period for decisions. However, the district court found that at the Board's first meeting, the expressed terms of the agreement were orally modified by the labor and management members, acting "on behalf of their principals," to substitute "within a reasonable time"

for "thirty days." Since the agreement establishing the Board does not prohibit oral modifications, and, indeed, expressly permits the Board to establish rules of procedure, we think that the Board acted within its province in deciding that such modifications are permitted. Hence, the district court correctly rejected Schneider's contention that the Board had no authority to modify the written agreement. *See Loveless v. Eastern Airlines, Inc.*, 681 F.2d 1272 (11th Cir.1982).

It appears that because the agreement in this case already provides for decisions to be rendered "within a reasonable time" *Jones* is inapposite. As the district court below correctly pointed out:

"The facts of the instant case are in considerable contrast to the facts of the *Jones* case. First, the operations of the Board are not subject to a specified time limit or 'goal'. The agreement which controls the operations of the Board was amended soon after creation of the Board to provide that awards shall be rendered 'within a reasonable time' and no specific time limit is stated. [Doc. 11, Exh. F]. Moreover, this Court finds that it is not necessary to refer to outside sources as did the *Jones* court in order to define 'reasonable time' because of the history of the pace at which the Board has rendered awards through the past 13 years. Southern and the Union had not considered the Board's pace to be unreasonable in connection with any of the 512 awards it has rendered, even though many of the awards have not been issued until more than nine months after the hearing [*Id.*]. Since the parties to the Agreement appear to be satisfied with the present arrangement, this Court will not impose its judgment on what is or is not 'reasonable time'."

We think the district court wisely stayed its hand, and its decision is affirmed.