UNITED STATES of America, Plaintiff,

v.

**DAYS INNS OF AMERICA, INC., et al., Defendants.**

**Civil Action No. 96–26.**

United States District Court,
E.D. Kentucky.

Sept. 30, 1998.

Janet Reno, Deval L. Patrick, John L. Wodatch, L. Irene Bowen, Thomas M. Contois, Alyse S. Bass, Ken S. Nakata, Isabelle Katz Pinzler, Renee M. Wohlenhaus, Jeanine M. Worden, Roberta Stinar Kirkendall, Margarita M. Prieto, U.S. Department of Justice,

Disability Rights Section, Washington, DC, for U.S.

John Armstrong West, Greenebaum, Doll & McDonald, Covington, KY, Edward S.G. Dennis, Jr., William L. Gardner, Bradford W. Coupe, Morgan, Lewis & Bockius, L.L.P., New York City, William L. Killion, Gregory R. Merz, Troy A. Bader, Mark C. Kruger, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for Days Inns of America, Inc. and Hospitality Franchise Systems, Inc.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on cross-motions for summary judgment. [Record Nos. 32, 58]. At the parties' request, oral arguments were held before the Court on September 22, 1998. Fully briefed, this matter is now ripe for decision. The Court, having reviewed the record and the memoranda submitted by the parties, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The case at bar is one of five cases in several federal district courts in which Plaintiff has brought suit against Defendants Days Inns of America, Inc. (hereinafter "DIA") and its parent corporation, HFS, Inc., for allegedly violating § 303 of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12183. In the case at bar, the violations pertain only to the Days Inn hotel in Hazard, Kentucky.

§ 303 states as follows:

New construction and alterations in public accommodations and commercial facilities

(a) Application of term

Except as provided in subsection (b) of this section, as applied to public accommodations and commercial facilities, discrimination for purposes of section 12182(a) of this title includes—

(1) a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter. . . .

In general, the violations alleged against the defendants fall into three categories: (1) conditions that resulted in unequal treatment for individuals with disabilities; (2) conditions that made it difficult or impossible for individuals with disabilities to gain access to or use some area or feature of the hotel; (3) conditions that presented potential safety hazards for individuals with disabilities.

When this matter was originally filed, it included Defendants Hazard Management Group, Inc., owner of the Days Inn in Hazard, Kentucky, J. Douglas Kidd, architect for said hotel, and Napier–Sebastian Construction, general contractor for said hotel. The aforementioned defendants have since agreed with Plaintiff to make all necessary repairs to conform to ADA standards and thus, have been dismissed from this matter. DIA and HFS, Inc., however, state that liability under § 303 is limited to owners, operators, lessors, and lessees of places of public accommodation and commercial facilities, and not to every entity who participates in the design and control of said accommodations and facilities. Additionally, DIA and HFS, Inc. state that they are not an operator of the Hazard Days Inn, nor are they an operator of any other lodging facility which bears the Days Inn name. DIA and HFS, Inc. further state that they did not participate in the design or construction of the Hazard Days Inn or any other Days Inn hotel.

Plaintiff urges the Court to interpret § 303 very broadly by looking to Congress's chief purpose in enacting the ADA. Said purpose was to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 28 U.S.C. § 12101(b)(1). Plaintiff states that the defendants were extensively involved in, and had extensive control over, the design and construction of the Hazard Days Inn, as well as control over the operation of the hotel. This involvement, accord-

ing to Plaintiff, makes the defendants liable for violating § 303.

## CONCLUSIONS OF LAW

### A. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis omitted).

### B. Interpretation of the ADA

Congress's efforts to ensure full and equal enjoyment of public facilities to all citizens is centered in two sections of the ADA. § 302 of the ADA, 42 U.S.C. § 12182, prohibits discrimination in existing facilities by holding accountable all owners, operators, lessors, or lessees of public accommodations who fail to create accessibility for disabled individuals to that establishment's "goods, services, facilities, privileges, advantages, or accommodations." *Id.* Congress defines public accommodations very broadly, and includes inns and hotels in its definition. 42 U.S.C. § 12181(7). Realizing the enormous costs that these accommodations may incur, Congress requires under § 302, only modest expenditures to provide access to the existing facilities. H.R.Rep. No. 101–485(III), at 62 (1990), *reprinted in* U.S.C.C.A.N. 267, 486. For all new construction and alterations, however, Congress implemented § 303, which demands complete accessibility. In an attempt to cover even more public arenas, Congress included in § 303, the term commercial facilities, which are defined as all facilities that are "intended for nonresidential use" whose "operations will affect commerce." 42 U.S.C. 12181(2). Every aspect of these new facilities must comply with ADA standards.

Although § 302 plainly states that owners, operators, lessors, and lessees are liable for ADA violations, § 303 does not contain the same readily identifiable language. Plaintiff argues that the liable parties are all entities involved in the design and construction of the facilities referred to in § 302. Defendants, however, argue that Congress intended all owners, operators, lessors, and lessees to be liable, just as those entities are liable in § 302.

The two sections at issue were initially drafted as part of a single statutory section.[1] As an effort to narrow the definition of "public accommodation" and create a broader group of facilities subject to ADA compliance, Congress drafted §§ 302 and 303. Based on the similarities in the purpose and in the drafting of §§ 302 and 303, it is apparent to this Court that Congress intended to limit liability under § 303 to owners, operators, lessors, and lessees. Failing to use § 302 as a guidepost for liability would result in the consequence of an illogical limit to the reach of § 303. Using language such as "design and construct" to guide liability would leave subcontractors, material suppliers, and similar entities faced with responsibilities which Congress never intended.[2]

§ 303 itself refers back to § 302 in a manner that makes it clear that the prohibitions relating to new construction apply to owners, operators, lessors, and lessees. It follows that this reference to § 302 was Congress's intention of continuing the same scope of liability. The Sixth Circuit has held that "when two or more statutes deal with the

---

1. S.933, 101st Cong., 1st Sess. (1989) was originally entitled "Public Accommodations and Services Operated by Private Entitles" and it later became Title III. § 402 of Senate Bill 933 eventually became §§ 302 and 303 of the ADA.

2. The district court in *Paralyzed Veterans of America v. Ellerbe Becket Architects*, 945 F.Supp. 1 (D.D.C.1996), came to a very similar conclusion when it held that architects were not liable under the ADA for their failure to design and construct facilities in accordance with §§ 302 and 303.

same subject, they are to be read *in pari materia* and harmonized if possible." *Jones v. St. Louis–San Francisco Ry. Co.*, 728 F.2d 257, 262 (6th Cir.1984). The statutory construction advocated by the plaintiff would work against this principle as it would dangerously expand the reach § 303.

Congress stated clearly in § 302 that the liable parties were to consist of owners, operators, lessors, and lessees. Had Congress intended to extend liability further in § 303, it could have easily done so. Instead § 303 is devoid of any additional entity that is subject to compliance with ADA standards.

### C. Defining "Operator"

To find liability under § 303, the plaintiff also attempts to classify the defendants as an operator of the hotel in Hazard. Plaintiff initially focuses on the defendants' control over the initial design and construction of the hotel and control through the defendants' license agreement with the franchisee. Next, Plaintiff points to control through the standard operating manual given to each Days Inn hotel and the Hospitality Management Training program provided to the owner of each hotel. Plaintiff also suggests that DIA's random quality assurance inspection of each hotel, which occurs three times a year, warrants the finding that the defendants are the operator of the Hazard Days Inn.

■ There are two prevalent theories used to determine who is an operator under the ADA. The first test comes from the Fifth Circuit ADA decision of *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir.1995), and states that a franchisor is not an operator if the "franchise agreement established no more than that the [franchisor] held the power to veto modifications to the [franchisee's] facilities." The relevant inquiry in this matter focuses on whether the franchisor "specifically controls the modification of the franchises to improve their accessibility to the disabled". *Id.* at 1066. In essence, to be classified as an operator, the franchisor must in some way actually cause the franchisee to comply or not to comply with the ADA. In the case at bar, the license agreement gave the defendants a type of supervisory or veto power pertaining to the construction of the facilities. The agreement specifically provided that DIA's review and approval of the facilities' plans were solely for the purpose of determining compliance with DIA's system standards and not for determining whether those plans satisfied legal requirements such as ADA standards. The agreement specifically stated that the franchisee was the party responsible for constructing and operating the facility in compliance with all legal requirements. Thus, the defendants have no control over the facility's compliance with the ADA.

■ The manual given to each franchisee includes among other information, grooming and attire for hotel employees, hours of operation of the front desk, and services that must be provided to guests such as wake-up calls and complimentary coffee. Also included are requirements for the provision of, and often the number and location of, pictures, desks, tables, chairs, televisions, mirrors, towel racks, ashtrays, and other similar hotel room items. The manual does not control, nor attempt to control, modification of the franchise. It merely provides the defendants' recommendations for properly running a Days Inn hotel. Thus, DIA cannot be classified as an operator under the Neff standard as these guidelines relate, instead, to the maintenance of quality of the hotel.

■ The training programs for managers and employees of all Days Inn Hotels cover guest relation services, setting room rates, motivating and managing hotel personnel, and similar topic areas. These training sessions are far from the control over structural modification necessary to qualify as an operator under *Neff.*

■ It appears that the purpose for the quality assurance inspections of each hotel is not for maintaining control over the hotel but to rate each hotel with regard to its compliance with the operating manual provided by the defendants. The ratings of each hotel are then published by the defendants in a Days Inn directory and distributed to the public at no charge at every Days Inn hotel, the Days Inn reservation center, and the Days Inn World Wide Web site. Franchisees are eager to achieve high ratings as it

translates into an increase in the number of guests as well as personal pride for the franchisee and his or her employees. Again, the Court can find no specific control over the modifications of the franchise and thus the inspection program does not cause the defendants to become an operator of the Hazard Days Inn.

The other theory in which the defendants may be classified as an operator is whether they maintain. control over the day-to-day operations of the hotel. The Court finds that any influence that the defendants may have on the day-today operations of the hotel through the manual, training sessions, or rating systems is not "control" over the hotel in the ordinary sense. While the Court finds that these mechanisms do indeed influence the way in which the franchisee operates the hotel, the purpose of these mechanisms is to improve the quality of the experience of the hotel guest, rather than for the purpose of controlling the structural modification of each hotel. Due to the commercial nature of the relationship between the franchisor and the franchisee, some degree of control would appear to be inherent, and has even been judicially accepted, to some extent, as the trademark name "Days Inn" and the quality put forth by the franchisee is a direct reflection on the franchisor. *See, Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 785–86 (3rd Cir.1978). Ultimately, the defendants cannot be considered an operator based on their day-to-day influence on the Days Inn hotel.

The defendants are not liable for any violation of § 303 of the ADA that occurred in the Hazard Days Inn hotel. Congress did not intend to find franchisors, such as the defendants, liable under § 303 and said statute is limited to owners, operators, lessors, and lessees of public accommodations and commercial facilities. Additionally, the defendants did not exercise any type of control over the Hazard Days Inn that would warrant classifying them as an operator of such establishment.

**IT IS HEREBY ORDERED:**

(1) That the defendants' motion for summary judgment be, and the same hereby is, **GRANTED;**

(2) That the plaintiff's cross-motion for summary judgment be, and the same hereby is, **DENIED.**