IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-10381
_____


STEVE WEINBERG, STEVE WEINBERG & ASSOCIATES, INC.

                         Plaintiffs-Counter Defendants-Appellants,

                    versus

HOWARD F. SILBER, individually and doing business as
PACIFIC SPORTS & ENTERTAINMENT

                              Defendant-Counter Claimant-Appellee,

PACIFIC SPORTS AND ENTERTAINMEMT, INC.

                              Defendant-Appellee.


_____

        Appeal from the United States District Court
            for the Northern District of Texas
                  (No. 99-CV-1432)
_____

                  January 6, 2003

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM[*]:

    Plaintiff-Appellant Steve Weinberg appeals the district
court's amended final judgment, confirming the arbitration award,
on several alternative grounds. Weinberg principally argues that
the district court's amended judgment should be set aside because

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the terms of the judgment are contradictory. Weinberg also challenges the underlying arbitration agreement and award on several bases. For the following reasons, the judgment of the district court is AFFIRMED.

## I.
## FACTS AND PROCEEDINGS

This appeal arises from the "acrimonious" termination of a joint venture agreement between two professional sports agents — Weinberg and Defendant-Appellee Howard Silber. In June of 1998, Weinberg and Silber entered into an oral agreement to represent professional football players. The terms of their agreement were never memorialized in a writing, but Weinberg and Silber purportedly agreed to share equally in all expenses incurred in recruiting clients and in commissions of up to 3% of their clients' compensation.

The joint venture eventually dissolved, and Weinberg and Silber each filed suit to resolve several disputed issues. In December 1999 the parties agreed to "consolidate before [an arbitrator] all claims and disputes of whatever nature made by the parties against each other" and to stay all pending litigation. The arbitration agreement specifically provided that the arbitrator "will hear all complaints and defenses relating to any matters in controversy between Weinberg and Silber" including "[t]he rights liabilities, and indebtedness of any of the parties with respect to" some fifty-one named athletes, including professional football

2

player Stephen Davis. An arbitration hearing was conducted on March 17, 2000.

In October 2000, the arbitrator issued an award, ordering "a split on fees paid only with respect to one of their joint-venture's clients, Washington Redskins running back Stephen Davis."[1]  The arbitrator specifically noted that "it is an undisputed fact that Mr. Weinberg acted as an agent of the Weinberg/Silber joint-venture and on behalf of Stephen Davis in negotiations with the Washington Redskins prior to and after June 1, 1999."[2]  Accordingly, the arbitrator determined that Weinberg and Silber should split fees earned both on Davis's completed 1999 contract and on a more recent contract, which was signed in September 2000 (six months after the arbitration hearing). The 2000 contract encompasses the 2000-08 football seasons and is valued at approximately $135 million; the 3% agent fee amounts to over $4 million.

Silber filed a motion to confirm the arbitration award in the Northern District of Texas; Weinberg filed a cross-motion to vacate the award.  The district court denied the motion to confirm without prejudice; denied the motion to vacate with prejudice; and remanded the case to the arbitrator for the limited purpose of making three specific corrections and clarifications to the award. After the

_____

[1] 2 R. 370.

[2] Id.

arbitrator amended the award, the district court confirmed it as amended and entered final judgment in January 2002. After granting Silber's motion to amend that judgment, the district court entered an amended final judgment on February 28, 2002; the only change was in the post-judgment interest rate.

Weinberg timely appeals the amended final judgment on at least six grounds. He argues that reversal of the district court's amended judgment is warranted because (1) the amended judgment confirming the amended arbitration award is contradictory and inconsistent; (2) the arbitrator based his award solely on post-submission events; (3) the underlying agreement to arbitrate is void because it does not contain procedural rules and guidelines; (4) the award is not within the scope of the disputes submitted; (5) the arbitrator's seven-month delay in ruling was impermissible; and (6) the lack of procedural rules constitutes a "jurisdictional defect."

## II.
## ANALYSIS

We review a district court's confirmation of an arbitration award de novo.[3]   Judicial review of arbitration awards is "extraordinarily narrow," and we will defer to the arbitrator's

---

[3] Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994).

4

decision whenever possible.[4] This <u>de novo</u> standard "is intended to reinforce the strong deference due an arbitrative tribunal."[5]

The Federal Arbitration Act prescribes the limited bases for vacatur of an arbitration award. Under the act, a court may vacate or modify an arbitration award only when (1) the award was procured by corruption, fraud or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing, in refusing to hear evidence, or other misbehavior; or (4) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[6]

We easily dispense with Weinberg's arguments, as none falls within the limited grounds for vacatur. First, Weinberg asserts that the amended final judgment is "self-contradictory as to a material term and incapable of compliance."[7] Weinberg reasons that the amended final judgment is invalid because it requires him to pay one-half of the 3% commission on Davis's <u>future</u> earnings (his

---

[4] <u>Antwine v. Prudential Bache Sec., Inc.</u> 899 F.2d 410, 413 (5th Cir. 1990).

[5] <u>McIlroy v. PaineWebber, Inc.</u>, 989 F.2d 817, 820 (5th Cir. 1993); <u>see</u> <u>also</u> <u>Brook v. Peak Int'l, Ltd.</u>, 294 F.3d 668, 672 (5th Cir. 2002) (explaining that "[i]n light of the strong federal policy favoring arbitration, [j]udicial review of an arbitration award is extraordinarily narrow") (internal quotations omitted).

[6] 9 U.S.C. § 10(a)(1)-(4).

[7] Appellant's Br. at 14.

5

salary for the 2001-08 seasons) immediately, i.e., within ten days of the date the final judgment is signed.[8] According to Weinberg, "[t]he judgment purports to require [him] to pay in ten days from funds he does not have, will not have for many years, and may never have."[9]

This argument is specious. The amended final judgment expressly incorporates the express terms and conditions of the amended arbitration award, which states that "with respect to and exclusively for Mr. Davis' 1999 contract, Mr. Weinberg is ordered to pay Mr. Silber a sum of $14,010.00 . . . no later than ten (10) days from the date of this arbitration award."[10] The amended award further provides:

> Mr. Weinberg is therefore ordered to pay 1.5% of any amounts currently paid to Mr. Davis under his 2000 through 2008 contract, and such payments are to be made no later than ten (10) days from the date of this Arbitration Award. <u>Thereafter</u> all payments from Mr. Weinberg to Mr. Silber are to be paid <u>no later than ten (10) days from the date Mr. Davis is paid</u> pursuant to the subject 2000 through 2008 contract.[11]

---

[8] Weinberg's argument rests entirely on the district court's unqualified use of the word "sum" in the amended final judgment. In the judgment, Weinberg is ordered to pay Silber "the sum specified in the Clarified Arbitration Award . . . [t]hat sum is to include . . . the amount (1.5% of earnings) under the NFL contracts for the 2001 t0 2008 seasons . . . [t]he sum is to be paid no later than ten (10) days from the date this Judgment is signed." Amended Final Judgment, 7 R. at 861-62.

[9] <u>Id.</u> (emphasis omitted).

[10] 6 R. at 612.

[11] <u>Id.</u> at 614 (emphasis added).

6

The amended arbitration award thus clearly and unambiguously specifies when payments to Silber are due: Amounts earned on the 1999 contract and any amounts already paid to Weinberg under the 2000-08 contracts are due within ten days of the date of the arbitration award; all other payments are to be paid within ten days of the date that Stephen Davis is paid.

Given the precise terms of the amended arbitration award, the amended final judgment, which is "to conform with the terms and conditions" of the amended award, is neither "self-contradictory" nor invalid. Although the term "sum" as used in the final judgment may be slightly ambiguous, the district court expressly adopted the terms and conditions of the arbitration award, which dictates beyond cavil Weinberg's schedule of payments. Accordingly, Weinberg's argument that the final judgment is "incapable of compliance" is meritless.

At oral argument, Weinberg advanced yet another, equally unavailing, theory of internal "inconsistency" in the arbitration award. He maintains that paragraph five of the award, in which the arbitrator broadly orders "a split on fees paid only with respect to . . . Stephen Davis" conflicts with paragraph nine of the award, which specifically orders all prospective payments from Weinberg to Silber to be paid within ten (10) days from the date Stephen Davis is paid. According to Weinberg, the award is unclear as to whether Weinberg is to pay Silber one-half of "fees paid" as they are received by Weinberg, or one-half of 3% of Davis's salary as it is

7

paid to him, regardless of whether (or when) Weinberg receives the 3% commission from Davis.

After careful review of the record, the original and amended arbitration awards and judgments, and the parties' briefs, we are satisfied that these two paragraphs are readily reconcilable and do not warrant modification of the award or remand to the arbitrator. Paragraph five sets forth the arbitrator's award in general terms — Weinberg and Silber are to split agent commissions, i.e., "fees paid," with respect to one client, Stephen Davis. Paragraph nine outlines, in detail, the payment arrangement: Weinberg is to pay Silber "1.5% of each dollar earned by Stephen Davis" no later than ten days from the date that <u>Davis</u> is <u>paid</u>. We acknowledge that under this payment plan, any risk of Davis's default is to be shouldered exclusively by Weinberg, whose obligation to Silber is triggered by the Redskins payment to Davis, regardless of whether Davis in turn pays Weinberg. We nevertheless decline to reexamine either the arbitrator's motive in crafting the payment terms or the merits of the underlying award. We conclude that the two provisions are compatible and that remand is not warranted on the basis of ambiguity or inconsistency.

We briefly address — and dispose of — Weinberg's remaining arguments, which are equally meritless and border on frivolousness. First, Weinberg contends that the arbitrator exceeded his authority by considering, and basing his award on, Stephen Davis's 2000 contract with the Washington Redskins. Weinberg argues that because

8

the arbitration hearing was held on March 17, 2000, and the Davis contract was not signed until September 2, 2000, the contract was beyond the temporal scope of the parties' agreement to arbitrate and was improperly factored into the final award.

This argument fails for several reasons. First, contrary to Weinberg's assertion, the Agreement to Arbitrate Disputes vests the arbitrator with broad authority to determine "the rights, liabilities, obligations and indebtedness of any of the parties to each other with respect to . . . Stephen Davis."[12] Given this broad mandate, the arbitrator did not exceed his jurisdiction in determining the "obligations and indebtedness" of the parties with respect to Stephen Davis's contract.[13]

Second, to the extent that Weinberg's argument is a thinly-veiled challenge to the arbitrator's resolution of the disputed

---

[12] Weinberg's heavy reliance on <u>Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.</u>, 991 F.2d 244 (5th Cir. 1993) is misplaced. In <u>Gulf Coast</u>, the court determined that an arbitrator's reliance on the plaintiff-employee's post-discharge rehabilitative efforts was improper because the only question before the arbitrator was whether the defendant had "just cause" to terminate the plaintiff on a specific date. In this case, the arbitrator had broad authority to resolve the "rights, liabilities, and indebtedness" of the parties with respect to some fifty-one clients, including Stephen Davis.

[13] <u>See</u> <u>Valentine Sugars, Inc. v. Donau Corp.</u>, 981 F.2d 210, 213 (5th Cir. 1993) (explaining that even though the "broad notice of arbitration . . . seems to give the arbitrator jurisdiction over anything under the sun . . . [t]he parties agreed to arbitration . . . and must accept the loose procedural requirements along with the benefits which arbitration provides").

9

issues, it also fails.[14]  Weinberg has repeatedly demonstrated that he is quite dissatisfied with the <u>result</u> in the arbitration. He has not, however, established that any one of his complaints falls within the narrow grounds for vacatur of an arbitration award.  We, like the district court, will not second-guess the arbitrator's resolution of this dispute.[15]  The arbitrator was not required to give reasons or an explanation in support of his award,[16] and absent evidence of clear error, reliance on the Davis contract (which was expressly included in the parties' broad agreement to arbitrate) does not warrant vacatur of the arbitrator's award.

Weinberg's remaining arguments, that the award was not timely, that the agreement to arbitrate was "void for vagueness," and that the lack of formal procedures and rules was a "jurisdictional defect" are similarly feckless. The arbitration agreement between Weinberg and Silber prescribed no time limit for decision, and Weinberg offers no case law to support his bald, sweeping assertion

---

[14] Weinberg questions "how is it equitable for one to pay <u>$2 million</u> to the other for doing <u>nothing</u>?" and contends that "Davis did not know Silber and would not have consented to his representation, because Silber represented one of Davis' competitors." Appellant's Br. at 18.

[15] <u>See</u> Memorandum Op. & Order, 6 R. 571 ("The Court will not engage in Monday morning quarter-backing with respect to the arbitrator's interpretation of the numerous documents and correspondence upon which Weinberg and Silber based their relationship, or his conclusion as to exactly when that extremely contentious relationship finally and legally disintegrated.").

[16] <u>Antwine</u>, 899 F.2d at 412 ("It has long been settled that arbitrators are not required to disclose or explain the reasons underlying an award.").

that a seven-month delay is <u>per se</u> unreasonable.[17] This "timeliness" argument reflects nothing more than Weinberg's deep dissatisfaction with what he considers to be the arbitrary and summary disposition of this case; it is not grounded in law or fact.[18]

Finally, we note that Weinberg's residual challenges to the underlying arbitration agreement are inapt. He cites no case law — and we have found none — in support of his theory that an agreement to arbitrate <u>must</u> include procedural "ground rules" to govern the proceedings.[19]   On the contrary, "[a]s a speedy and informal

---

[17]   Weinberg improperly relies on <u>Jones v. St.Louis-San Francisco Ry. Co.</u>, 728 F.2d 257 (6th Cir. 1984). In <u>Jones</u>, the arbitration agreement at issue included an express fifteen-day time limit, but the award was issued some fourteen months after the hearing date. Moreover, unlike Weinberg, "the appellant made numerous attempts to have a decision rendered in a timely manner." <u>Id.</u> at 266. The court further noted that "some courts have held that the authority of the arbitrator does not expire until after a <u>reasonable</u> time beyond the original time limitation provided in the agreement . . . [t]his rule of reasonableness developed to prohibit parties from waiting until an award is made and objecting to it on the basis of its untimeliness <u>only</u> <u>after</u> they receive an unfavorable decision." <u>Id.</u>   In this case, the record on appeal reflects that Weinberg did not object to the timeliness of the arbitrator's decision — or any other alleged procedural defects — until he received an (unfavorable) result.

[18] Weinberg irrelevantly speculates that during the seven-month interval between the arbitration hearing and the award the arbitrator "was not reviewing the documents, considering the testimony, recalling the arguments" but was "wait[ing] for some advantageous and unpredictable event to solve his puzzle." Appellant's Br. at 19-20; <u>see</u> <u>also</u> Appellant's Reply Br. at 13 ("The length of delay perhaps would not be problematic standing alone, had the arbitrator been diligently fulfilling his task . . . [b]ut that was not what the arbitrator was doing.") (emphasis omitted).

[19] Weinberg's theory in this regard is two-pronged. First, he asserts that underlying arbitration agreement is "void for

11

alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials."[20]  We have previously explained that "[p]arties to voluntary arbitration may <u>not</u> superimpose rigorous procedural limitations on the very process designed to avoid such limitations."[21]

Furthermore, in this case any procedural objections were likely waived, as Weinberg participated fully in the arbitration proceedings yet never complained about any lack of rules or procedures (or any other defect) until he received an unfavorable result. "It is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrator[] when the result turns out to be adverse."[22]

## III.
## Conclusion

---

vagueness" because "there was no contract telling the arbitrator what the 'ground rules' were." Appellant's Br. at 26. Second, he argues that this purported lack of procedural rules "amounts to an absence of jurisdiction on the part of the arbitrator." <u>Id.</u> at 27.

[20] <u>Forsythe Int'l, S.A. v. Gibbs Oil Co.</u>, 915 F.2d 1017, 1022 (5th Cir. 1990).

[21] <u>Id.</u> (emphasis added).

[22] <u>Brook</u>, 294 F.3d at 674 (quoting <u>Marino v. Writers Guild of Am., East, Inc.</u>, 992 F.2d 1480, 1484 (9th Cir. 1993)).

For the foregoing reasons, the judgment of the district court is AFFIRMED.