NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0015n.06
Filed: January 9, 2009

No. 06-6493

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MANEUS L. BISHOP, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**Before: MARTIN and GILMAN, Circuit Judges; and CARR, Chief District Judge.** *

**RONALD LEE GILMAN, Circuit Judge.** Maneus Bishop entered into a plea agreement

with the government. Pursuant to the agreement, he pled guilty to one count of conspiring to

distribute drugs and to another count of conspiring to launder money. Bishop also agreed to aid in

the government's investigation of other crimes. In return, the government promised to ask the

district court to sentence Bishop below the Sentencing Guidelines range if he complied with the

terms of the plea agreement. But the government ultimately refused to do so after it determined that

the agreement had been breached by Bishop. The court, after sustaining the government's position,

sentenced Bishop to a term of 275 months in prison. For the reasons set forth below, we **AFFIRM**

the judgment of the district court.

---

 * The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting
by designation.

## I.  BACKGROUND

In April 2005, a federal grand jury indicted Bishop and five codefendants on charges of conspiring to possess and distribute five kilograms of powder cocaine and 50 grams or more of crack cocaine, all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  Each of the defendants, including Bishop, was also indicted on a charge of conspiring to launder money, in violation of 18 U.S.C. § 1956(h).  Bishop was separately indicted on several other drug-related charges.

In July 2005, Bishop reached a plea agreement with the government, pleading guilty to both conspiracy counts.  Bishop agreed, among other things, to fully cooperate with the government, disclose all of his assets, and to forfeit all drug proceeds and other property.  This included three vehicles and $1,000 in cash that Bishop possessed when a search warrant was executed at his residence.  One provision of the agreement required the government to file a motion for a downward departure from the Sentencing Guidelines if Bishop provided substantial assistance to the government, but a separate provision stated that the government would be relieved of its obligations under the agreement if Bishop gave a false statement to a federal agent.  The government does not dispute that Bishop provided substantial assistance.  But there is a dispute regarding whether the plea agreement required the government to move for a downward departure even if Bishop did not satisfy the other terms of the agreement.

The government refused to move for a downward departure at Bishop's sentencing hearing because it contended that Bishop had breached the terms of the plea agreement by concealing assets.  It learned of the alleged concealment from letters sent by Bishop to a fellow inmate while Bishop

was in jail awaiting sentencing. Bishop's jailmate provided the letters to the government. They stated, among other things, that the government "ain't going to get my quarter million," and that Bishop "was not broke," but "rich." Bishop's letters also stated that the government "wanted his money," but that he would not disgorge "his life savings." The government thereupon informed the district court that there would be no motion for a downward departure in Bishop's sentence, arguing that Bishop's failure to disclose and disgorge all of his assets relieved the government of its obligation to make the motion under the terms of the plea agreement.

Bishop's sentencing hearing took place in November 2006. During the hearing, the district court allowed, but did not require, Bishop to explain the statements in the letters regarding his "quarter million." Bishop confirmed that the reference to "my quarter million," if taken literally, would mean that he had $250,000 waiting for him upon release from prison. He nevertheless testified the statements were exaggerations calculated to make himself look good in front of his fellow inmate. The court did not believe his explanation, finding that the letters "say what they say," and that "there was no reason for you [i.e., Bishop] to write those notes unless they were true. No reason." Moreover, the court found that Bishop's misrepresentation was in violation of the plea agreement, stating that "when you misrepresent something, that you agreed you wouldn't misrepresent, that . . . can be costly."

Bishop was sentenced to a term of 275 months in prison for his participation in the drug conspiracy, to be served concurrently with a term of 240 months' imprisonment on the money-laundering charge. This was a downward variance from a term of 360 months to life in prison recommended by the Presentence Report (PSR) pursuant to the applicable Guidelines range.

After imposing the sentence, the district court asked Bishop whether he had any objections. Bishop's only objection was that the PSR relied on prior convictions to enhance his sentence. This was impermissible, according to Bishop, because his prior convictions were not facts proven beyond a reasonable doubt before a jury in the present case. The district court overruled the objection, and Bishop timely appealed.

## II.  ANALYSIS

### A.     Whether the government established that Bishop breached the plea agreement

Bishop argues that the district court's factual finding that Bishop concealed money is erroneous because he does not actually have such funds. He also argues, in the alternative, that even if he did have such funds, the government has not met its burden of showing that he breached the plea agreement. We will address each contention in turn.

### 1.        *The district court's factual finding that Bishop concealed assets*

The district court's determinations that Bishop concealed money from the government and lied about it are factual findings that will not be reversed unless they are clearly erroneous. *See United States v. Hamilton*, 263 F.3d 645, 651 (6th Cir. 2001) ("This court will not set aside a district court's findings of fact from a sentencing hearing unless the findings are clearly erroneous.").

Bishop maintains on appeal that he does not actually have $250,000 hidden away, and that he was simply bragging to make himself look good in front of a fellow inmate. He attempts to show a clear error by contending that neither the district court nor the government really believed that Bishop was concealing money. If the district court truly believed that he had lots of money, Bishop

argues, then why did the court allow counsel to be appointed to represent him, and why did the court not impose a fine on him? And if the government actually believed Bishop had the money, then why did the government fail to (a) contest Bishop's receipt of a reduction in sentence for accepting responsibility, (b) move to withdraw from the plea agreement, (c) conduct an ongoing investigation to find the money, or (d) have Bishop take a polygraph test?

But the district court's actions are not inconsistent with its finding that Bishop concealed assets and lied about it. The record does not support the claim that counsel was appointed by the court to represent him. Indeed, Bishop's counsel during the sentencing hearing was not court appointed. Furthermore, although a court-appointed attorney represented Bishop on appeal, the lawyer was appointed by this court, not the district court. Bishop's argument about his counsel simply has no bearing on the district court's factual finding that Bishop concealed assets.

Nor does the district court's omission of a fine undermine its finding in that regard. At best, Bishop has demonstrated that the record is unclear as to why the court did not impose a fine. This hardly warrants a reversal of the court's factual finding. Vacating Bishop's sentence on this issue might simply induce the court to impose a fine on Bishop to "correct" its oversight. In sum, nothing in the record supports the accusation that the court was being disingenuous in finding that Bishop concealed money from the government.

Nor does the government's behavior support Bishop's contention that he did not actually hide money. The four enumerated government actions listed above, even if accurate, are not inconsistent with the belief that Bishop has money stashed away. Each of the actions might well be a strategic choice that falls within the scope of the government's prosecutorial discretion—and as such is not

readily susceptible to appellate review. *See United States v. Derrick*, 163 F.3d 799, 824-25 (4th Cir. 1998) ("The caselaw is legend from the Supreme Court and the courts of appeals that the investigatory and prosecutorial function rests exclusively with the Executive.") (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Moreover, Bishop has not offered a persuasive reason why the district court's factual finding should in any way depend on the subjective state of mind of the government's attorneys in this case.

In sum, the district court relied on letters written by Bishop himself in finding that Bishop had concealed substantial funds from the government and lied about it. The court also found that Bishop's explanation for why these written statements should not be believed was itself implausible. Bishop has failed to convince us that the district court erred, let alone that its factual findings were clearly erroneous.

### 2. *Bishop's purported breach of the plea agreement*

We review de novo the question of whether Bishop breached the plea agreement. *See United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004). Such agreements "are contractual in nature, and as such, courts are guided by general principles of contract interpretation when construing plea agreements." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). Moreover, "[t]he determinative factor in interpreting a plea agreement is not the parties' actual understanding of the terms of the agreement; instead, an agreement must be construed as a reasonable person would interpret its words." *Id.* at 663. Ambiguities in a plea agreement are construed against the government, *id.* at 662, and the government bears the burden of proving a breach if it alleges that a breach has occurred. *United States v. Benjamin*, 138 F.3d 1069, 1074 (6th Cir. 1998).

Paragraphs 5 and 6 of the plea agreement required Bishop to "cooperate fully, truthfully, and completely" under the plea agreement. In paragraph 7, the agreement provided that in the event Bishop "commit[s] perjury or give[s] a false statement to a federal agent, then the United States . . . will be free to withdraw from this plea agreement or be relieved of its obligations under this agreement." And paragraph 16 of the agreement required Bishop

> to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture as proceeds of [Bishop's] drug distribution activities or assets used to facilitate the distribution of cocaine hydrochlorides or cocaine base, which are in the possession or control of [Bishop or his] nominees. [Bishop] further agrees to fully assist the government in the recovery and return to the United States any assets or portions thereof subject to forfeiture. [Bishop] further agrees to make a full and complete disclosure of all assets over which [he] exercises control and those which are held or controlled by this agreement.

On appeal, Bishop maintains that he did not materially breach the terms of the plea agreement even if he did fail to disclose assets to the government. He first argues that the agreement specifically enumerates quantities of cash and other assets that he agreed to forfeit. The fact that the agreement did not identify the $250,000 in cash suggests, according to Bishop, that he was not required to disgorge that amount. Bishop also argues that his agreement to cooperate with the government extended only "in regards to his criminal pursuits of others." A few offhand comments to a fellow inmate did not, Bishop contends, belie cooperation in the pursuit of others. Bishop asserts for these reasons that there was no material breach of a term essential to the purpose of the contract. The government responds by arguing that Bishop breached the plea agreement by (a) failing to disclose assets (under ¶ 16), (b) refusing to forfeit drug proceeds (also under ¶ 16), (c)

refusing to cooperate truthfully (under ¶¶ 5, 6), and (d) giving false statements to a federal agent (under ¶ 7).

We find the government's response persuasive. Bishop agreed in paragraph 16 of the plea agreement to "make a full and complete disclosure of all assets over which [he] exercises control and those which are held and controlled by [the plea agreement]." Bishop never explains how his written declaration of hiding $250,000 is consistent with the plain language of this particular disclosure requirement. Moreover, the district court's finding that Bishop concealed funds necessarily implies that he lied to federal agents about the amount of assets that he possessed, in violation of paragraph 7. The government has therefore established by a preponderance of the evidence that Bishop breached at least two independent terms of his plea agreement by failing to disclose assets. We thus see no need to further determine whether Bishop breached other provisions of the plea agreement.

**B.      Burden of proving a breach of the plea agreement**

Bishop maintains that the district court improperly shifted the burden of proof by relying on Bishop's sentencing-hearing testimony in determining that he breached the plea agreement. But Bishop cites no authority for the proposition that, by evaluating a defendant's voluntary testimony, a court thereby improperly shifts the evidentiary burden to the defendant. The very reason that Bishop chose to testify was to try to rebut the evidence proffered *by the government* to satisfy *its* burden—that is, the letters the government obtained from Bishop's jailmate. We therefore conclude that the district court did not improperly shift the burden of establishing a breach to Bishop.

**C.      Whether the government affirmatively breached the plea agreement**

Bishop cites *United States v. Villareal*, 491 F.3d 605 (6th Cir. 2007), to support his claim that where a defendant has provided substantial assistance to the government under the terms of a plea agreement, the government must move for a downward departure if the agreement so requires. Bishop next maintains that the only remedy available for a breach in this case is to void the plea agreement in its entirety, which Bishop asserts would have the effect of letting the case proceed to trial. Because these arguments were not raised below, we will evaluate them under the plain-error standard of review. *See Johnson v. United States*, 520 U.S. 461, 465-67 (1997) (citing Fed. R. Crim. P. 52(b)).

Bishop's claims fail on the merits. *Villareal* establishes that where the government promises that it "will" move for a downward departure based on a defendant's providing "substantial assistance," the government will ordinarily be compelled to do so once it determines that the defendant indeed provided such assistance. *Villareal*, 491 F.3d at 609-10. But *Villareal* also implicitly recognizes that the government is excused from its duty if the defendant otherwise breaches the plea agreement. *Id.* at 610 (explaining that where the government decides not to file a motion for a reduction in sentence, the government must establish that the defendant breached the plea agreement). In *Villareal*, the government abandoned its contention that the defendant had breached his plea agreement, and therefore was not permitted to argue on appeal that the defendant's alleged breach excused it from moving for a downward departure from the Guidelines range. *Id.* at 610-11 (noting that the government in *Villareal* had failed to point to any evidence in the record indicating that a breach had occurred). In this case, however, the government did not abandon

its claim that Bishop breached the plea agreement. The government also pointed to evidence in the record to support its claim that a breach had occurred. *Villareal* is therefore distinguishable.

Bishop's second argument—that the only remedy available where one party breaches the plea agreement is to void it—fails because the agreement does not so limit the government's remedies. Paragraph 7 of the plea agreement provides that "[s]hould the defendant commit perjury or give a false statement to a federal agent, then the United States will be free to prosecute defendant for that offense and will be free to withdraw from this plea agreement or be relieved of its obligations under this agreement." Bishop's failure to disclose the $250,000 evidences a manifest misrepresentation of his total assets to federal agents. This relieved the government of its conditional obligation to move for a downward departure. The district court did not plainly err in declining to conclude otherwise.

**D.     The district court's construction of the Sentencing Guidelines**

In addition to the above-discussed arguments based on the plea agreement, Bishop argues for the first time on appeal that the district court procedurally erred by construing the Sentencing Guidelines to be mandatory. Such a construction would be contrary to *United States v. Booker*, 543 U.S. 220 (2005). Plain-error review applies because the argument was not raised below. *See United States v. Vonner*, 516 F.3d 382, 386 (2008) (applying the rule that if a sentencing judge asks, during the sentencing hearing, whether there is any objection that has not previously been raised, "and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court.").

There is no indication that the district court viewed the Guidelines to be mandatory in nature. The court expressly referred to the Guidelines as "advisory." And the court sentenced Bishop to 275 months in prison, which is an 85-month downward variance from the applicable Guidelines range of 360 months to life in prison. The court would not have imposed a below-Guidelines sentence if it truly thought that the Guidelines were mandatory. Bishop's argument has failed to identify an error, plain or otherwise, in the court's understanding of the Guidelines' advisory nature.

**E.      Use of prior convictions does not violate the Sixth Amendment**

Bishop's final argument is that the district court erred in relying on his prior convictions in calculating the Guidelines range. He contends that such convictions are facts that must be established by the jury that would have heard the present charges against him but for his guilty plea. This argument, however, squarely contradicts this court's binding precedent. *See United States v. Branch*, 537 F.3d 582, 593 (6th Cir. 2008) ("The Supreme Court has repeatedly held that unlike other sentence-enhancing facts, no Sixth Amendment problem arises when a district court finds the fact of a prior conviction.") (citing, among other cases, *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998)). Bishop's argument is therefore without merit.

**III.  CONCLUSION**

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.