NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0951n.06

No. 11-1778

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 27, 2012**

LEONARD GREEN, Clerk

| | |
|---|---|
| BARRICK ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff-Appellee, | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| v. | ) THE EASTERN DISTRICT OF |
| | ) MICHIGAN |
| CRESCENT PETROLEUM, INC., et al., | ) |
| | ) |
| Defendants-Appellants. | ) |

**Before:**     **KEITH, GIBBONS, and DONALD, Circuit Judges.**

**PER CURIAM.**  Appellants Crescent Petroleum Inc., Mohammed El-Bathy, and Bassel El-Bathy (collectively, "Crescent") appeal the district court's affirmation of an arbitration award in Appellee Barrick Enterprises, Inc.'s ("Barrick") favor.  For the following reasons, we affirm the district court's judgment.

## BACKGROUND

This appeal involves disputes arising under a petroleum supply agreement.  Under the agreement, Barrick, a petroleum supplier, agreed to provide Crescent, a gas station, with gasoline at its Madison Heights, Michigan, location.  Approximately two and a half years into the agreement, Barrick filed suit against Crescent in state court, alleging that Crescent had breached the sales agreement by failing to pay for delivered gasoline.  Crescent removed the action to federal court and asserted counter-claims alleging that Barrick had violated the Petroleum Marketing Practices Act. 15 U.S.C. § 2801 *et seq.*  The parties eventually agreed to dismiss some of their claims and resolve

the rest by arbitration. To that end, they negotiated and agreed upon the guidelines and rules for the arbitration, and the district court adopted them in an arbitration order ("the Order"). Under the Order, the parties agreed to submit their claims to a Certified Public Accountant at the accounting firm of UHY Advisors, MI, Inc. ("the Arbitrator") to render an opinion using "generally accepted accounting principles" as to the amount of money owed or, in the alternative, the amount of money overpaid, between the parties. The Order also provided, in relevant part, that "[t]he Arbitrator shall be free to direct questions and request documents or records from the parties as may be needed to evaluate and render a final determination of the Account Balance so long as any such questions or requests, and the subsequent disclosures thereto, are disclosed to the opposing party."

Pertinent to this appeal, the Arbitrator at one point spoke with a Barrick employee, Vickie Morton ("Morton"), without counsel present. Emails indicate that counsel for both Barrick and Crescent were made aware of and agreed to this "ex parte" communication. Ultimately, the Arbitrator found that Crescent owed Barrick $379,239.60 for unpaid deliveries of fuel, and that Barrick had overcharged Crescent for some of the fuel it delivered, making it liable to Crescent for $97,505.53. Accordingly, the Arbitrator awarded Barrick net damages of $281,734.07, to be paid by Crescent. On April 8, 2010, Crescent timely filed a Motion to Vacate and/or Modify Arbitration Award. The district court denied the motion without oral argument on July 28, 2010, and issued a judgment affirming the arbitration award on March 23, 2011. Crescent then filed a Motion to Amend/Correct Judgment, which the district court also denied. Crescent timely appealed.

## DISCUSSION

2

No. 11-1778
*Barrick Enterprises, Inc. v. Crescent Petroleum, Inc., et al.*

Crescent raises two arguments. First, Crescent argues that the district court erred in affirming the arbitration award because the Arbitrator conducted ex parte proceedings, thus prejudicing Crescent and exceeding its powers under the Order. Second, it argues that the district court erred in affirming the award because the Arbitrator applied the wrong evidentiary standard. We address these arguments in turn.

"We review the confirmation of an arbitration award for clear error on findings of fact and de novo on questions of law." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). Our review of an arbitration award "is one of the narrowest standards of judicial review in all of American jurisprudence." *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (internal quotation and citation omitted); *Fed. Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990) (describing this court's role as "extremely limited" ). Indeed, "[a]s long as the arbitrator's award draws its essence from [an agreement], and is not merely [the arbitrator's] own brand of . . . justice, the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (internal quotation and citation omitted); *cf. Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) ("If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.").

**I. The communications with Morton**

No. 11-1778
*Barrick Enterprises, Inc. v. Crescent Petroleum, Inc., et al.*

Crescent alleges that the Arbitrator's "ex parte" communications with Morton (a Barrick employee) prejudiced Crescent and was in excess of its powers. As such, it argues, the district court should have vacated the award pursuant to the Federal Arbitration Act. *See* 9 U.S.C. §10(a).

The Federal Arbitration Act, which governs the parties' rights in arbitration, provides that a court may only vacate an arbitration award in the following instances:

> (1) where the award was procured by corruption, fraud, or other means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of *any other misbehavior by which the rights of any party have been prejudiced*; or
> (4) *where the arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a) (emphasis added). Additionally, in *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989), the Supreme Court recognized nonstatutory grounds for reversal where the Arbitrator acts with manifest disregard for the law. We have "emphasized that manifest disregard of the law is a very narrow standard of review." *Jaros*, 70 F.3d at 421. (internal citation omitted). "A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Id.* (internal citation omitted).

A. *Prejudice*

On May 11, 2009, the Arbitrator communicated with Morton outside the presence of counsel. Crescent argues that it was "severely prejudiced" by this communication because it had "no idea what [Morton] testified to, and had no opportunity to cross-examine her." It further argues that

4

Morton's testimony is "presumably biased in favor of her employer," Barrick. Crescent points out

that "some courts have . . . held that arbitrators cannot conduct ex parte hearings or receive evidence

unless it is done in the presence of the other arbitrators and the parties." *See Jones v. St. Louis-San*

*Francisco Ry. Co.*, 728 F.2d 257, 263 (6th Cir. 1984). At first blush, this principle and the Order's

language potentially appear to provide Crescent with cause for complaint. Ultimately, however,

Crescent's arguments are unconvincing.

As an initial matter, Crescent's reliance on *Jones* is misplaced. The *Jones* principle is an

observation, not a rule, and references decisions that do not control this court. *See Jones*, 728 F.2d

at 263 (referring to decisions from other jurisdictions, e.g., *Totem Marine Tug & Barge v. North Am.*

*Towing*, 607 F.2d 649, 653 (5th Cir. 1979)[1] and *Katz v. Uvegi*, 187 N.Y.S.2d 511, 518 (N.Y. Sup.

Ct. 1959)). *Jones* is also factually distinguishable. In that case, we considered whether an

arbitration award was proper where an arbitration *board* rendered its decision after some members

_____

[1] To be sure, our sister circuit's opinion in *Totem Marine* vacated an arbitrator's award where the arbitrator received information ex parte. But the arbitrator's behavior in that case went far beyond what occurred here. In *Totem Marine*, while post-arbitration deliberations were taking place, the arbitrators realized that their notes included inconsistent earnings figures. *Id.* at 650. To resolve this inconsistency, they phoned one party's counsel; obtained a figure that they deemed definitive even though it did not match any of the figures in their notes; used that figure to complete their computations; and neither notified the other party of the communication nor gave it an opportunity to respond to the figure. *Id.* at 650-52. On appeal, the Fifth Circuit found not only that the arbitrators should not have considered the earnings figure to begin with, *id.* at 651-52, but that, not surprisingly, the method by which they obtained the figure was improper, *id.* at 652. In so doing, the court observed that "arbitrators cannot conduct ex parte hearings or receive evidence excect in the presence of each other and of the parties, *unless otherwise stipulated*." *Id.* (quotation and citation omitted) (emphasis added). Even if this decision were controlling, it would be distinguishable. The facts are different, and, as we will discuss below, the Arbitrator's conversation with Morton was, we conclude, "otherwise stipulated."

resigned, and neither of the two substitute arbitrators attended the hearing or heard all the evidence presented. *See Jones*, 728 F.2d at 264. "Thus, a majority of the board did not fully consider appellant's claims." *Id.* We concluded that the board failed to afford the litigants "complete fairness" as required by the Railway Labor Act, 45 U.S.C. § 153. *Id.* at 263-64. Those factors simply are not present in the instant case, and merely acknowledging the law in other jurisdictions does not constitute a holding that binds this court.

But even if *Jones* were helpful to Crescent, Crescent's interpretation of the Order and its complaint of prejudice would still be unavailing. To be sure, the provision of the Order that Crescent cites is arguably subject to multiple interpretations: "The Arbitrator shall be free to direct questions and request documents or records from the parties as may be needed to evaluate and render a final determination of the Account Balance *so long as any such questions or requests, and the subsequent disclosures thereto, are disclosed to the opposing party*." (emphasis added). According to Crescent, this means that when the Arbitrator directed questions at Morton, he was required to disclose the actual questions and subjects covered to Crescent.

Courts give contract language "its ordinary and natural meaning." *See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (internal citation and quotation omitted). "Disclose" means "to make known," or to "divulge." *Webster's Third New International Dictionary* 645 (8th ed. 1986). Nevertheless, it is unclear whether, under the Order, the Arbitrator simply must alert the parties that questioning will occur and cover certain subjects (which, as discussed below, the Arbitrator did), or must disclose the actual questions asked (which

the Arbitrator did not). If "disclose" means the latter, Crescent may, indeed, have been prejudiced by the Arbitrator's departure from the agreed-upon procedure.

But there are two problems with Crescent's argument. The first is that the contract is only arguably ambiguous, and even if "disclose" means to divulge questions with exacting specificity, we review the Arbitrator's different interpretation with great deference. As we have said, as long as the Arbitrator is "even arguably construing . . . the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *J.V.B. Indus.*, 894 F.2d at 866 (citing *Misco*, 484 U.S. at 38); *cf. Jaros*, 70 F.3d at 421 ("If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside."). In light of the foregoing, we decline to disturb the award based on the Arbitrator's interpretation of the disclosure requirement.

Second, Crescent agreed to the procedure by which Morton was questioned, i.e., without counsel and without full and specific disclosure of the items discussed and questions asked. A series of emails between the Arbitrator, Barrick's counsel, and Crescent's counsel demonstrates Crescent's acquiescence.

On May 7, 2009, the Arbitrator sent the following email to counsel for both Barrick and Crescent:

> At this time we would like to invite Barrick's controller [Morton] to our offices to assist us in understanding certain data entry processes of the business. . . . Please advise.

7

No. 11-1778
*Barrick Enterprises, Inc. v. Crescent Petroleum, Inc., et al.*

In response to Barrick's counsel asking to be present at the meeting, the Arbitrator responded as follows (also on May 7, 2009):

> I would not think so. That would add pressure to her that is not warranted for what we are seeking to understand at this time. Having been through the data we desire to understand more about the customer payment cycle Barrick employs. It is nothing that she will have to 'prep' for or that she should feel stressed/nervous about. Anticipating both your desires to be at any meeting, I confirm to you that we will not be sharing any form of balance information with her, such that one side would feel at an advantage over the other.

Counsel for Crescent was copied on that email. Crescent neither asked to be present nor objected to the proceedings, and they took place on May 11, 2009. One day later, the Arbitrator extended a similar invitation to Crescent's counsel, inviting gas station owner Mohammed El-Bathy to "come to our offices to assist us in understand[ing] the procedures employed by Crescent and the materials presented to us." The Arbitrator noted that "[a]ttorney presence is not required." Counsel for Crescent responded, "*I think your approach is wise.* I will have my client contact you to meet. I will not be present, as I assume [counsel for Barrick] will not be either." (emphasis added).

Crescent's acquiescence is fatal to its argument. In *Order of Ry. Conductors and Brakemen v. Clinchfield R. Co.*, 407 F.2d 985, 988 (6th Cir. 1969), we stated that parties in arbitration waive their right to complain about defects in the arbitration process if such objections are not raised at that time:

> It is also well settled that defects in proceedings prior to or during arbitration may be waived by a party's acquiescence in the arbitration with knowledge of the defect. Moreover, if the impeaching party's own action contributes to a variance from the prescribed procedure, such party may be estopped to complain of the variance.

8

In that case, the arbitration board was composed of five members despite the statutory requirement that it be composed of either three or six. This court held that "the unions waived their right to object to the statutory departure by participating in the arbitration proceedings without objection on this point." *Id.* at 989.[2]

Counsel for Crescent was copied on all emails sent by the Arbitrator regarding his desire to meet and speak ex parte with Morton, yet did not raise an objection despite language in the Order which may have precluded the arrangement. Counsel for Crescent also explicitly agreed to follow a similar course of conduct with his own client, stating to the Arbitrator, "I think your approach is wise." On these facts, Crescent has waived any objection it may have had to the ex parte communications, whether or not they constituted a departure from the Order's prescriptions.

In light of the foregoing facts and the extremely narrow standard of review, we conclude that the ex parte meeting does not constitute grounds for relief.

B. *The Arbitrator's Powers*

Crescent next argues that the district court should have vacated the award because, in conducting the ex parte proceeding, the Arbitrator failed to "adhere to the terms" of the Order, and thus exceeded its powers. *See* 9 U.S.C. § 10(a)(4) (permitting a court to vacate an arbitration award "where the arbitrators exceeded their powers"). This court has instructed that arbitrators "do not exceed their authority unless 'they display a manifest disregard of the law,' which 'means more than

---

[2]Though *Clinchfield* was decided over forty years ago, we still rely upon it. *See Armco Emples. Indep. Fedn., Inc. v. AK Steel Corp.*, 149 F. App'x 347, 352 (6th Cir. 2005); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003).

9

mere error in interpretation or application of the law.'" *Appalachian Reg'l Healthcare, Inc. v. Beyt, Rish, Robbins Grp., Architects*, No. 91-6063, 1992 U.S. App. LEXIS 12100, *11 (6th Cir. May 19, 1992) (citing *J.V.B. Indust.*, 894 F.2d at 866). Rather, "the decision must fly in the face of clearly established legal precedent." *Jaros*, 70 F.3d at 421. (internal citation omitted). As long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *J.V.B. Indus.*, 894 F.2d at 866 (citing *Misco*, 484 U.S. at 38).

Though the contract is perhaps ambiguous regarding the disclosure requirement, it would be all but impossible to say that the Arbitrator was not "arguably construing or applying the contract and acting within the scope of his authority." *Id.* And we know of no cases that would indicate that the Arbitrator's ex parte meeting with Morton flies in the face of clearly established precedent. Finally, Crescent lodged no objection to the proceedings, and "defects in proceedings prior to or during arbitration may be waived by a party's acquiescence in the arbitration with knowledge of the defect." *Clinchfield R.R. Co.*, 407 F.2d at 988. For the foregoing reasons, we conclude that Crescent's arguments are without merit.

## II. Evidentiary Standards

Crescent next asserts that the arbitrator engaged in an "improper application of evidentiary procedures." Crescent argues that the Arbitrator relied on considerations like temperature, fuel/water tank content, evaporation, leakage, and other elements of geology and petroleum engineering when he lacked the expertise to do so, and that he did not give Crescent the opportunity to present expert testimony on the same subjects. Crescent also argues that the Arbitrator erroneously used an "all or

nothing" approach, i.e., "unilaterally adopted the liability standard that Barrick had to be 100% responsible for any fuel shortages before liability could be attached to them," and then stated that "the evidence was insufficient to deem Barrick 100% liable for Crescent's fuel shortage." This, Crescent argues, shows a "manifest disregard of the law," and the award must accordingly be vacated. But the record does not bear this out.

To begin with, "[a]rbitrators are not bound by formal rules of procedure and evidence." *Nat'l Post Office Mailhandlers v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985). Furthermore, we note that this court and others have recognized a presumption in favor of an arbitration award's validity. *See, e.g., Kroger Co. v. Intern. Broth. of Teamsters, etc.*, 380 F.2d 728, 730 (6th Cir. 1967) ("It is axiomatic that a court will not review the merits of an arbitration award.") (citation omitted); *Telephone Workers Union of New Jersey, Local 827, Intern. Broth. of Elec. Workers, AFL-CIO v. New Jersey Bell Tel. Co.*, 450 F. Supp. 284, 291) (D. N. J. 1977) ("There is a presumption in favor of the award's validity."). These specific principles, taken together with the general principles guiding our review, mean that Crescent has a high bar to clear before we will find fault with the Arbitrator's evidentiary decisions. But even if we could review Crescent's claims without deference, the record simply does not support them.

First, the Arbitrator did *not* rely on temperature, fuel/water tank content, etc. Rather, he merely opined that any number of factors other than an intentional short-changing by Barrick could account for discrepancies. Nowhere in the award does he engage in a geological analysis or an analysis based on petroleum engineering expertise, real or purported. In fact, he concludes that the discrepancies were attributable to Crescent's accounting practices—a conclusion well within the

11

Arbitrator's expertise under the Order, which required him to use generally accepted accounting

principles.[3]

Second, the Arbitrator did not unilaterally adopt an "all or nothing" liability standard. The

award contains a single statement that "the evidence provided [was] insufficient to conclude that

[Barrick] alone could have been the cause of the volume discrepancy"; but that is simply another way

to phrase his finding that "any volume discrepancies that may exist are not readily attributable to the

actions of [Barrick]." This does not amount to an impermissible evidentiary standard under which,

as it alleges, Crescent was required to prove that Barrick was completely and solely responsible for

the shortages before any liability could attach to Barrick. Nor does it amount to a manifest disregard

of clearly established law. We thus reject Crescent's evidentiary arguments.

## CONCLUSION

---

[3]The Arbitrator's final award states:

[Arbitrator] notes several instances in which the discrepancies revolve around deliveries made at the very end of or beginning of a particular month. These are often termed cut-off issues as the data may not have been received by [Crescent] from [Barrick] at the time [month-end] record keeping activities occur. Typically these are self correcting in that the following month will include the data missed from the prior month and thus in total they are reconciled. In the instant case, [Arbitrator] believes that it has observed cut-off issues in [Crescent's] reporting practices that were not properly accounted for in the subsequent month. . . . Finally, [Arbitrator] believes that in certain instances [Crescent] failed to account for deliveries made in its reporting as noted and supported by shippers. The analysis performed strongly suggests that [Barrick's] delivery records . . . are accurate and reconcilable to [Crescent's] own records with rational explanations. Given the evidence provided and the analysis conducted, [Arbitrator] finds that any volume discrepancies that may exist are not readily attributable to the actions of [Barrick].

(emphasis in original removed).

12

No. 11-1778
*Barrick Enterprises, Inc. v. Crescent Petroleum, Inc., et al.*

For the foregoing reasons, we AFFIRM the district court's decision to affirm the arbitration award.