**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0412n.06

**No. 12-4418**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 09, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MICHAEL ESCUE | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE** |
| SEQUENT, INC., et al. | ) | **SOUTHERN DISTRICT OF** |
| | ) | **OHIO** |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:   BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; and BELL, District
Judge[*]

**ALICE M. BATCHELDER, Chief Judge.**   Through a merger agreement that became
effective on January 1, 2007, Sequent, Inc. acquired Better Business Solutions of Alabama, Inc.
("BBSA").   Michael Escue, the sole shareholder of BBSA, claims that Sequent[1] breached the
merger agreement and committed fraud when it allegedly misrepresented and omitted certain
material information throughout the merger process and in the agreement itself.   The district
court granted summary judgment to Sequent on Escue's breach-of-contract and fraud claims.
For the reasons set forth below, we AFFIRM the district court's judgment.

---

[*]The Hon. Robert Holmes Bell, United States District Judge for the Western District of Michigan sitting by
designation.

[1]Throughout this opinion, we refer to Appellees, Sequent, Inc. and its Directors, collectively as "Sequent."

**I.**

Both Sequent and BBSA are Professional Employee Organizations (PEOs) – organizations that provide risk management and human resource services to small- and medium-size businesses. At the 2004 National Association of Professional Employer Organizations ("NAPEO") conference, Sequent's founding-shareholder William Hutter and Escue met to discuss Sequent's success as a PEO. Sequent is one of only a few PEOs in the country that has been able to satisfy the strict financial and operational integrity accreditation standards of the Employer Services Assurance Corporation ("ESAC"), and Escue was impressed with this information. Escue was further impressed by the unique way in which Sequent provided affordable health care coverage to the employees of its customers, especially because BBSA had not been able to do the same with its customers' employees.

Sequent is the sponsor of the Sequent, Inc. Flexible Benefits Plan (the "Plan"), an employee benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan provides health insurance coverage to Sequent's own employees, its customers ("Jobsite Employers"), and its employees who have been leased to its customers ("Jobsite Employees"). Sequent created the Sequent Welfare Benefits Trust (the "Trust") for the purpose of holding the Plan assets, receiving premium payments from Jobsite Employers and Employees and Sequent's employees, and paying those premiums to insurers. Hutter and other Sequent shareholders also created Accompany Benefits, LLC ("ABL") to offer consulting services to Sequent, the Plan, and the Trust in the areas of employee benefits design; life, health, and disability insurance; and retirement and nonqualified deferred compensation plans.

Beginning in 2005 and continuing into 2006, Escue engaged in negotiations with Hutter concerning the merger of BBSA with Sequent. In May of 2005, the U.S. Department of Labor

(the "DOL") notified Sequent that it wanted to review Sequent's Plan for compliance with ERISA. In February of 2006, a DOL representative told Darrell Hughes, Sequent's general counsel, that the DOL had opened a criminal investigation[2] regarding a transaction between Sequent's Trust[3] and ABL. Hutter claims that he was extremely upset upon hearing this news, and that he contacted Escue immediately, telling him via email that he was "devastated." Hutter further claims that he and Escue had a phone conversation during which they both agreed to put the merger negotiations on hold. Escue denies receiving or responding to the email, or talking with Hutter over the phone regarding the criminal investigation; in fact, he claims that he was told that Sequent's Plan was subject to only a routine audit.

Although Sequent claims that the transaction under investigation between the Trust and ABL was an administrative error, Escue asserts that it was a part of an embezzlement scheme purposefully set up by Sequent. Escue alleges that, prior to the merger negotiations, Sequent decided to make loans in the amount of $347,918 to its individual directors. According to Escue, this scheme caused Sequent's financial status to fail to meet ESAC's accounting standards. To correct this problem, Sequent allegedly approved the sale of the loans to ABL. Because ABL only had $90,000 in available cash, Sequent allegedly caused the Trust to act in violation of ERISA by illegally paying $257,918 to ABL. Although Sequent asserts that the erroneous transaction was immediately reversed once it was discovered, Escue alleges that Sequent only reversed the transaction upon hearing of the criminal investigation.

---

[2]The DOL is responsible for investigating civil and criminal violations of ERISA. *See* 29 U.S.C. § 1136(b).

[3]Because the Trust's only function was to hold money for the Plan, the investigation of the Plan necessarily included the investigation of the Trust.

At the time of the negotiations, however, Escue was not aware of the embezzlement scheme he now alleges. So he proceeded with the merger transaction in May of 2006 by agreeing to economic terms with Sequent and beginning the due diligence process. In Escue's list of requested documents under the category "S. Litigation," Escue asked Sequent to provide a "[c]opy of most recent response to auditors' request for information about litigation and/or contingent liabilities of the Company."[4] In response to this item, Hughes provided a copy of his May 4, 2006, letter to the auditor of the Plan (the "letter"). The third and fourth paragraphs of the letter stated:

> As Corporate Counsel for Sequent, I am aware of a pending U.S. Department of Labor ("DOL") civil and criminal investigation of the Plan for Plan Years 2001, 2002, 2003, 2004 and 2005. . . .
> I am also aware of funds being inadvertently transferred in January 2006 as a result of an apparent administrative error from the Sequent Employee Welfare Benefits Trust to Accompany Benefits LLC which may constitute a prohibited transaction under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code of 1986. This transaction has subsequently been reversed. Lost opportunity costs will be restored to the Sequent Employee Welfare Benefits Trust. This transaction will be reported to the Internal Revenue Services on a Form 5330 accompanied by the payment of the applicable excise tax associated with the use of the funds.

Hughes delivered this letter in a three-ring binder with documents responsive to other items on the list. The documents were separated by tabs, and the letter was placed behind a tab numbered "8" in the "S. Litigation" section of the binder. Hughes also sent an electronic copy of all the

---

[4]Sequent, the Plan, and BBSA were audited by outside certified public accountants. Before completing an audit, outside accounting firms typically ask legal counsel to identify "litigation and/or contingent liabilities" that might impact the company. Once those liabilities are identified, the accounting firm decides whether they warrant disclosure on the audited financial statement. When the exchanges between the company and its auditors are provided as a part of the due diligence process before a merger, it allows the merger partner to learn about matters that might adversely impact the company that the auditor decided not to disclose as part of the financial statements. The merger partner can then suspend discussions or further negotiate terms depending on what he or she learns.

responsive documents to Escue, and created an identical hard copy of the documents placed in a separate binder for Escue's attorneys, Brad Sklar and Peter Hardin.

Escue and his attorneys acknowledged reviewing the due diligence materials in their respective binders. Each also confirmed that his respective binder contained the letter. But Escue's attorneys claimed that they did not read the full letter because the letter did not appear to concern the audit of Sequent itself, but rather only the audit of Sequent's Plan.[5] Escue and his attorneys all testified that, if they had read the letter, it would have caused them at least to pause and ask more questions about the investigation before proceeding with the merger agreement.

Section 6.08 of the merger agreement, entitled "Litigation," disclosed (through Schedule 6.08 of the Sequent Disclosure Schedules) that Sequent was the subject of a "DOL investigation into Sequent's Section 125 Plan." But in section 6.10(d)(ii) of the agreement, Sequent represented and warranted: "Except as otherwise disclosed on Schedule 6.10(d) of Sequent Disclosure Schedule, there are no pending, or to the knowledge of Sequent, threatened or material claims (other than routine claims for benefits) by, on behalf of, or against any employee benefit plans . . . or any trust related thereto." And Sequent's Disclosure Schedule 6.10(d) listed its "Claims Against Employee Benefit Plans" as "None." Still, the introduction of the Disclosure Schedules stated, "Any matter disclosed in any section or subsection of the Disclosure Schedules shall be deemed disclosed for the purposes of any other schedule in which it may be relevant."

After approval from Sequent on December 19, 2006, Hutter and Escue signed the merger agreement. Sequent acquired BBSA, and Escue became a director of Sequent with 14,000 shares

---

[5]Escue and his attorneys believed that the letter only concerned Sequent's Plan because it was titled "Audit of Sequent, Inc.'s Flexible Benefits Plan."

of Sequent common stock and an annual salary of $160,000. In September of 2007, the DOL identified Hutter and other directors as subjects of the criminal investigation and indicated for the first time what they believed Sequent had done wrong.[6] Escue claims that this was the first time he learned of the criminal investigation.

When Escue asked Sequent to unwind the merger, Sequent asked for over one million dollars in exchange. Escue then resigned his position and sent a letter to Sequent on December 18, 2008, stating that he intended to sue the company for breaching its representations and warranties. The letter stated that it was being sent pursuant to Section 8.04 of the merger agreement – the "Survival Clause."

Escue filed the instant diversity action in the district court in September of 2009, asserting twelve claims for relief. After Sequent filed two counterclaims against Escue for breach of contract and breach of fiduciary duty, both parties filed motions for summary judgment. In April of 2012, the district court granted summary judgment to Sequent on Escue's breach-of-contract and fraud claims, finding that both parties' breach-of-contract claims regarding the merger agreement's representations and warranties were time-barred by the Survival Clause of the agreement, and that Escue's fraud claims failed to raise genuine issues of material fact. The claims that remained went to trial and the jury returned a verdict in favor of Escue on those claims. Escue appeals the summary-judgment order of the district court.

---

[6]From the record, it is not clear exactly what criminal activity was alleged against Sequent by the DOL because the DOL never prosecuted Sequent for any violation of the law. But both parties acknowledge that the allegations centered around the transfer of funds from the Trust to ABL.

**II.**

This court reviews a district court's grant of a motion for summary judgment *de novo*. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment should be rendered if there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). "The court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010). But "[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

*A.      Breach-of-Contract Claims*

The first and second claims in Escue's complaint allege that Sequent breached the merger agreement between Sequent and BBSA, and seek rescission or, alternatively, money damages as a remedy for the alleged breach. The district court held that Escue's breach-of-contract claims were "foreclosed by a survival clause contained in the merger agreement," and therefore awarded summary judgment to Sequent. For the reasons outlined below, although the district court erred in holding that the claims were foreclosed by the Survival Clause, the district court did not err in granting summary judgment to Sequent. And "we may affirm for any reason supported by the record." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003).

Section 8.04(b), the Survival Clause, of the merger agreement states that select representations and warranties "shall survive the execution and delivery of this Agreement and the Closing until the earlier of an initial public offering of Sequent's Common Stock or the second anniversary date of the Closing." The representations and warranties covered by this

clause include those made in Sections 6.06, 6.08, and 6.10 of the agreement, and Escue bases his breach-of-contract claims on alleged misrepresentations made by Sequent in those sections of the agreement. Because the agreement's closing date was January 1, 2007, Sequent argues that Escue's breach-of-contract claims are time-barred by the Survival Clause because they were not *filed* by January 1, 2009 – the second anniversary of the closing date. But Escue argues that his claims are not time-barred because he gave *notice* of his claims within the two-year time period. Thus, while Sequent interprets the Survival Clause to require *filing* of all claims related to the select representations and warranties within the two-year time period, Escue interprets the clause to require only *notice* of such claims within that time period.

"Because this is a diversity case, [the court applies] the substantive law of the forum state," which here is Ohio. *See Great Am. Assur. Co. v. Am. Cas. Co. of Reading, Pa.*, 511 F. App'x 431, 434 (6th Cir. 2013). Under Ohio law in 2007,[7] the applicable statute of limitations for breach-of-contract claims was twelve years. R.C. § 2305.06. "Ohio law permits contractual modification of the applicable statute of limitations if the modification is reasonable." *Arcade Co. Ltd. v. Arcade, LLC*, 105 F. App'x 808, 810 (6th Cir. 2004). Given that "[s]tatutes of limitation exist to provide finality for potential litigants . . . [a]n agreement purporting to affect this finality must be made manifest in clear, unequivocal language." *Id.* at 811. In *Arcade Co.*, we held that a survival clause much like the one here did not provide clear language creating a modification of the statute of limitations because the clause "neither mention[ed] nor purport[ed] to limit any 'action,' 'lawsuit,' or 'demand.'" *Id.* at 810. Rather, it merely stated that certain representations and warranties would survive the closing of the contract by one year. *Id.*

---

[7]The year in which Escue's cause of action accrued.

"[U]nder Ohio's case law, something more than this language is required to support a finding that the parties intended to modify the statute of limitations." *Id.* Because the Survival Clause in the merger agreement "contains no express reference to 'actions,' 'demands,' or even to breach of the contract, [it] does not clearly manifest an intent to establish a contractual limitations period." *Id.* at 811.

Although "[e]xtrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning," *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996), the extrinsic evidence available here does not clearly show the parties' intent. Each party filed a motion for summary judgment against the other's breach-of-contract claims, each asserting that the other's claims were contractually time-barred by the Survival Clause. But in their motions for summary judgment the parties argued for two completely different theories of contractual modification. Although Sequent argued that the statute of limitations had been modified to require *filing* within the two-year time period, Escue argued it had been modified to require only *notice* within the two-year time period. Because the parties' intent is not manifestly clear from either the contractual language or extrinsic evidence, the merger agreement does not modify the statute of limitations, and Escue's breach-of-contract claims are not time-barred. *See Arcade Co.*, 105 F. App'x at 810-11.

Still, to survive summary judgment, Escue must make a sufficient showing of each element of his claims, because he would bear the burden of proof on those elements at trial. *See Vereecke*, 609 F.3d at 399. Those elements are (1) existence of a contract, (2) performance of the contract by the plaintiff, (3) failure by the defendant to fulfill his obligations (breach), and

(4) damage or loss to the plaintiff as a result of the defendant's failure (causation). *Lawrence v. Lorain Cty. Cmty. Coll.*, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998). Although the parties do not dispute the existence of the first two elements, they disagree as to whether there is sufficient evidence to support the existence of the latter two elements – breach and causation.

> ### 1.    Breach

Escue alleges that Sequent breached the merger agreement by stating "unambiguous falsehoods" in Sections 6.06, 6.08, and 6.10 of the agreement as read with the Sequent Disclosure Schedules. Although a misrepresentation of fact is not necessarily a breach, where a contract requires a party to provide information to the other, a misrepresentation of that information constitutes a breach.[8] In Section 6.06 of the merger agreement, Sequent represented that its audited financial statements conformed to generally-accepted accounting principles ("GAAP"). Escue alleges that Sequent's audited financial statements did not comply with GAAP because the statements did not disclose the DOL criminal investigation as a contingent liability. But Sequent's auditor was not required to list the criminal investigation as a contingent liability on the financial statements because the auditor had discretion to decide which liabilities warranted disclosure and which did not.[9] Further, Sequent provided information on the potential liability of the criminal investigation in its letter disclosed during the due diligence process, and also in Section 6.08 of the merger agreement. Finally, Escue's own expert testified that one should not "rely solely on a company's financial statements" in performing "financial due

---

[8]Joseph Perillo, *Calamari and Perillo on Contracts* 292 (West 2009); *see also United States v. Bishop*, 306 F. App'x 934, 938-39 (6th Cir. 2009) (holding that when defendant agreed to disclose all assets over which he exercised control and then refused to disclose certain cash holdings, he breached the agreement).

[9]*See supra* note 4.

diligence" because there could always be contingent liabilities "that haven't risen to the level that they need to be on the financial statement[s]." Because Sequent provided all that was required in its financial statements, Escue has not sufficiently shown that Sequent breached Section 6.06 of the merger agreement.[10]

Section 6.08 of the merger agreement required Sequent to disclose any governmental investigation affecting the company of which it was aware. In its response in its Disclosure Schedules, Sequent listed the "DOL Investigation of Sequent's 125 Plan." Escue claims that this statement was misleading because Sequent could have described the investigation in more detail, and could have told Escue that the focus of the investigation was embezzlement. But there is no evidence in the record to support Escue's contention that Sequent was aware that embezzlement was the focus, other than Escue's allegations.[11] Further, Sequent had already noted the criminal nature of the investigation to Escue through its letter disclosed during the due diligence process before the merger. Finally, Section 6.08 required only that Sequent "list" any investigations of which it was aware; the plain language did not require specific details regarding investigations. Because Escue has produced insufficient evidence to raise a genuine issue of material fact as to

---

[10]*See* Perillo at 292 (A negligent misrepresentation is a breach only if it misrepresents information that is *required* to be disclosed).

[11]As stated by the district court, "Although some of the activities Escue asserts are illegal are unquestionably curious, this does not mean that they are necessarily illegal. Escue's contentions of illegal dealing by [Sequent] is based on his own assertions; in his briefing, he does not 'show his work' to raise a genuine issue of material fact in regard to the proposition." Escue argues that the district court erred by not viewing the facts in a light most favorable to the nonmoving party on a motion for summary judgment. But Escue's assertions are not facts the court was required to view favorably to Escue. *See Vereecke*, 609 F.3d at 399.

In contrast, Sequent provided testimony from its counsel Darrell Hughes that Sequent had no indication from the government as to what it had done wrong until *after* the merger closed. Sequent also provided an email exchange between Hutter and Escue from before the merger, which strongly suggested to the court that the criminal investigation was surprising to Sequent and that Sequent did not know exactly what alleged illegal activity was being investigated at that time.

whether Sequent provided all the information that was necessary under Section 6.08 of the agreement,[12] Sequent cannot be shown to have breached that section of the agreement.[13]

Lastly, Escue alleges that Sequent misrepresented two separate facts in Section 6.10 of the merger agreement. In subsection (d)(i), Sequent stated that it had operated its Plan "at all times . . . in compliance with ERISA." Escue claims that this statement was false because Sequent knew of the prohibited transactions. In subsection (d)(ii) of 6.10, Sequent represented that there were "no pending, or to the knowledge of Sequent, threatened or anticipated material claims . . . by, on behalf of or against any of the Employee Benefit Plans . . . or any trust related thereto," except as disclosed in Schedule 6.10(d). And Schedule 6.10(d) stated "none." Escue claims that this statement was false because the criminal investigation was a "threatened or anticipated material claim," and Sequent was aware of it. But the Introduction of the Disclosure Schedules states, "Any matter disclosed in any other section or subsection of the Disclosure Schedules shall be deemed disclosed for the purposes of any other schedule in which it may be relevant." Given that the criminal investigation was disclosed in Schedule 6.08, it was not required to be again disclosed in Schedule 6.10. Because Escue has been unable to produce sufficient evidence that Sequent failed to disclose required information in either subsection of 6.10, Sequent cannot be found to have breached that section of the merger agreement.

---

[12]*See Barrick Enters., Inc. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 671-18 (6th Cir. 2012) (finding that, where contract language may be ambiguous, courts give the language its ordinary meaning, and require the parties to comply with only that ordinary meaning).

[13]*See* Perillo at 292, 374-76 (A negligent misrepresentation is a breach only if it misrepresents information that is *required* to be disclosed.).

2.      *Causation*

Even if Escue had produced evidence of Sequent's breach of the agreement sufficient to survive summary judgment, he still has not produced sufficient evidence to show that Sequent's breach actually *caused* Escue's loss or damages.  Escue argues that he would not have allowed the merger between BBSA and Sequent if he had known about the DOL criminal investigation of Sequent's Plan, and that he did not know about the investigation due to Sequent's misrepresentations in the merger agreement.  But, as previously explained, Sequent disclosed the criminal investigation in the agreement.  Further, Sequent provided a letter, which described the investigation and the transaction at issue, to Escue and his attorneys during the due diligence process.  Even though the letter's title concerned Sequent's Plan, there was nothing false or misleading about the title; rather, it was true that the DOL was investigating the Plan, and any merger partner would have been on notice that such an investigation might affect a potential merger.  Escue even admitted that he was originally attracted to Sequent because of its Plan, and therefore, a reasonable merger partner in Escue's position should have at least inquired further upon reading the title of the letter.

As aptly stated by the district court, "the letter disclosure was key."  Although the parties debate the veracity or sufficiency of other disclosures, such as Hutter's email exchange with Escue, it is undisputed that the letter was delivered to Escue and his attorneys during the due diligence process, and the letter contained information about the DOL criminal investigation and the transaction at the heart of that investigation.  Because it is clear that Sequent disclosed the criminal investigation to Escue in this manner, nondisclosure or misrepresentation of the same

information in some other context cannot be the cause of any loss or damage to Escue.[14]  Escue admits that if he or his attorneys had simply read the letter, he likely would have avoided any loss or damage to himself or BBSA.  Ultimately then, if Escue did suffer loss or damage as a result of the merger, he cannot recover for it because he could have prevented it.

Because Escue has not made a sufficient showing of the elements of breach and causation, and because those elements are essential to his breach-of-contract claims, there remains no genuine issue of material fact and Sequent is entitled to judgment as a matter of law. *See Vereecke*, 609 F.3d at 399.

### B.    Fraud Claims

Escue's remaining claims on appeal – claims 3-7, 9, and 10 – allege that Sequent committed fraud against Escue when it misrepresented or omitted information regarding the DOL criminal investigation, and seek various remedies as a result.  The district court correctly held that Escue's fraud claims raised no genuine issue of material fact and awarded summary judgment to Sequent.

Claims three and four of Escue's complaint seek rescission and, alternatively, money damages on the ground of common-law fraudulent inducement.  "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract." *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574,

---

[14]*See Cammerer Farms v. Terra Intern, Inc*., 1991 WL 274322, at *3 (Ohio Ct. App. 1991) ("It is fundamental that in order for a party to a contract to recover damages as a result of another's breach of that contract, the damages must have been actually caused by the breach, or would not have occurred had the defendant performed the promises which he made in the contract. . . . Thus, to obtain a damage award, the injury to the plaintiff must be the reasonably certain and definite consequence of the contractual breach.").

578 (Ohio 1998).  Escue asserts his third and fourth claims more broadly, directing this court to the elements of a general claim of fraud:

> (1) a representation (or concealment of a fact when there is a duty to disclose); (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with intent to mislead another into relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance.

*Volbers-Klarich v. Middletown Mgt., Inc.,* 929 N.E.2d 434, 440 (Ohio 2010).  But as the district court correctly observed, Escue's fraud claims "suffer from a flawed foundation."  Although the parties dispute whether Hutter sent an email to Escue regarding the criminal investigation and later called him to explain the details, both parties agree that Sequent sent a letter that detailed the investigation to Escue and his attorneys prior to the consummation of the merger agreement.  And, as explained in regard to Escue's breach-of-contract claims, Escue has not made a sufficient showing that Sequent misrepresented or omitted material information regarding the investigation; rather, Sequent has provided evidence that it disclosed to Escue, through the letter, all the material information regarding the investigation.[15]  Therefore, Escue has not provided sufficient evidence of the first four elements of his fraud claims to survive summary judgment.

Even if Escue had demonstrated the existence of those elements, he has not done so as to the last two elements – justifiable reliance and injury proximately caused by that reliance.  Escue argues that he relied on the alleged misrepresentations and omissions surrounding the merger agreement, but that reliance is not justified because Escue in fact had the letter disclosed during

---

[15]*See supra* note 11.

the due diligence process.[16]  *See Mid-Am. Tire, Inc. v. PTZ Trading Ltd.*, 768 N.E.2d 619, 644 (Ohio 2002) (noting that a buyer cannot recover for fraud if it his own "lack of diligence that failed to expose" the fraud).  Further, Escue cannot show that his injury was proximately caused by his reliance on misrepresented information because, as the district court noted, "Sequent did not conceal that which Escue target[ed], the fact of the investigation and the reversed transaction."  Escue simply cannot claim that he was injured due to Sequent's failure to make him aware of the DOL criminal investigation and the Plan transaction because Sequent did all that it was required to do to make Escue aware of those very facts.  In short, Escue has failed to make a sufficient evidentiary showing of any of the essential elements of his common-law fraud claims.

Escue's remaining fraud claims – 5-7, 9, and 10 – all assert causes of action that require proof of the same misrepresentations or omissions underlying his other fraud claims and breach-of-contract claims.[17]  But, as we have already explained, Escue has not provided sufficient evidence of any misrepresentations or omissions to preserve these claims for trial.  Sequent therefore is entitled to judgment as a matter of law.  *See Vereecke*, 609 F.3d at 399.

---

[16]Escue argues that he could not have relied on the letter because the manner in which it was disclosed made it difficult to find.  But, as already noted, Sequent delivered the letter in a neatly organized binder and placed it behind a tab labeled "Litigation."  The title of the letter – Audit of Sequent, Inc.'s Flexible Benefits Plan – was not misleading because the investigation, at that time, involved only Sequent's Plan.

[17]Escue's fifth and sixth claims assert fraud claims for relief under Section 10(b) of the Securities Exchange Act of 1943, 15 U.S.C. § 78(j)(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5(b), seeking rescission or, alternatively, money damages.  "To prevail on a securities fraud claim under § 10(b)(5) and Rule 10b-5, a plaintiff must establish (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing injury."  *Saxe v. Dlusky*, 268 F. App'x 438, 440 (6th Cir. 2008) (internal quotation marks omitted).  Escue's seventh claim seeks damages against Hutter and other individual defendants under Ohio Rev. Code § 1701.93(A)(1) for their alleged misrepresentations and omissions.  Escue's ninth and tenth claims seek rescission or, alternatively, money damages against Sequent for the purported unlawful sale of a security under Ohio Revised Code §§ 1707.43 and 1707.44.  These sections of the Ohio Revised Code prohibit only affirmative misrepresentations.  *See State v. Warner*, 564 N.E.2d 18, 37 (Ohio 1990).

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.