NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0192n.06

Case No. 15-1821

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 05, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| SPIRIT AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ASSOCIATION OF FLIGHT | ) | MICHIGAN |
| ATTENDANTS-CWA, AFL-CIO, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: MERRITT, GIBBONS, and SUTTON, Circuit Judges

**MERRITT, Circuit Judge.** This case arises under the Railway Labor Act ("the Act") from an arbitration dispute between Spirit Airlines ("Spirit") and the Association of Flight Attendants ("the Association") representing Spirit's employees. The arbitration arrangement calls for a three-member arbitration board with an employee representative, a representative of management, and a neutral arbitrator. The question presented here is a technical procedural issue, not the merits of the dispute: Do the majority-vote provisions of the Act and the parties' Agreement allow a neutral arbitrator to determine unilaterally that a former full-time Spirit employee may continue to serve on the adjustment board and vote once she retires? Spirit says "No," the arbitration decision made by the retired employee and the neutral arbitrator must be set

aside and an entirely new arbitration proceeding commenced. The district court rejected Spirit's argument, and we agree.[1]

## I. Facts

The Association and Spirit are parties to a collective bargaining agreement which, among other things, governs employees' grievance procedures. Pursuant to § 22 of the Agreement, the grievance process culminates in a final and binding arbitration of unresolved grievances before the Spirit Airlines Flight Attendant System Board of Adjustment, an adjustment board that is created pursuant to the Act. 45 U.S.C. § 184. The provision of the Act relevant to this case states that "[a] majority vote of all members . . . of the [a]djustment [b]oard eligible to vote shall be competent to make an award with respect to any dispute submitted to it." 45 U.S.C. § 153 First (n). The Agreement requires that: (1) the Board "shall consist of three (3) Board Members: a[n Association] representative, a [Spirit] representative and [a neutral] arbitrator"; (2) all board members, except the neutral arbitrator, "shall be full time [Spirit] employees"; and (3) "[d]ecisions of the Board . . . shall be by a majority vote and shall be final and binding on all parties."

On January 28, 2011, Spirit flight attendant Robert Shipley filed a grievance alleging that distinctions imposed by Spirit between health insurance options offered to married flight attendants and those offered to flight attendants with domestic partners violated the provisions of the Agreement prohibiting discrimination based on marital status. Spirit maintains four health insurance options for its employees: "two point-of-service plans (Plan A and Plan B), one plan of the health maintenance organization type, and a fourth [plan] called the Diamond Health Fund

---

[1] The Railway Labor Act at 45 U.S.C. § 153 First (n) provides as follows: "A majority vote of all members of the division of the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it." The parties do not dispute that § 153 First (n) applies to this case, and we have no occasion to question its applicability.

Plan which combines a high-deductible plan with an employer-funded Health Reimbursement Account (HRA) that allows employees to use such funds for medical out-of-pocket costs such as co-payments, etc." R. 2-12, Page ID #: 240. Spirit pilots and flight attendants may enroll in any of the four health insurance plans, and Spirit has made each of the health plans available to the spouses and children of its pilots and flight attendants. But a Spirit employee who wishes to obtain health insurance coverage for a domestic partner is required to select the higher-cost Diamond Health Fund Plan for both the domestic partner and him or herself.

Association representative and Spirit flight attendant Carmen Linn, Spirit representative Costin Corneanu, and neutral arbitrator Susan R. Brown formed the Board selected to arbitrate Shipley's grievance. The grievance proceeded to arbitration before the Board on July 26, 2012, and all three Board members were present for the hearing.

On September 26, 2012, Brown circulated a "draft" opinion and award in favor of employee Shipley and the Association. Because Linn had retired a few days earlier on September 1, 2012, Spirit objected to the "draft" award and claimed that Linn's retirement made her ineligible to continue serving on the Board because the parties' Agreement required "[a]ll Board members . . . [to] be full time [Spirit] employees." Spirit maintained that because Linn's retirement a few days earlier made her ineligible to serve on the Board, Brown's "draft" award in favor of the Association could not be ratified by a majority vote of the Board as is required by the Act and the parties' Agreement. Brown initially concluded that she lacked authority to resolve this dispute, and told Spirit and the Association that they should resolve the Board composition issue either by mutual agreement or through the judicial process.

On December 26, 2012, the Association filed suit in the United States District Court for the Eastern District of Michigan in order to compel Spirit to recognize Linn as a valid member of

the Board or to resubmit the grievance for a *de novo* hearing before an adjustment board chaired by Brown. The district court granted Spirit's motion to dismiss, concluding that because Brown's "draft" award was not yet final and the parties' dispute over the composition of the Board constituted a "minor" dispute within the meaning of the Act, the parties had to resolve their dispute through the mandatory procedures set forth in the Act. But the district court emphasized that while Brown's decision was not then final and binding, it might "become so. In other words, re-arbitration may not necessarily be required." There was no appeal, and the dispute remained unresolved.

On August 14, 2013, the Association filed a motion with Brown requesting that she decide the parties' Board composition dispute. Spirit responded that Brown had no jurisdiction to decide the Board composition dispute, and reminded Brown of her earlier statement that she lacked "authority" to decide the issue. In a September 24, 2013 letter, Brown announced that she would issue a ruling regarding the parties' dispute. Because the Board composition issue arose during the Board's deliberations, and because the district court both "opined that the matter indeed belongs to an arbitrator" and did not prohibit Brown from resolving the issue, Brown reasoned that she, as the arbitrator with jurisdiction over the domestic partner health benefits grievance, had authority to decide this "issue of procedure."

On November 18, 2013, Brown ruled that Linn was not disqualified but was still a member of the Board until the Board issued its final award. Brown concluded that because "the composition of the Board was proper when initially constituted," Linn's status did not change during the life of the case even though Linn, through her retirement, became ineligible under the Agreement to serve on *future* boards. On January 10, 2014, the majority of the Board — Linn and Brown — resolved the grievance in favor of the Association and issued a final and binding

opinion and award. Corneanu, maintaining that Linn was ineligible to vote in support of the Board's award, dissented.

Spirit brought this action in the United States District Court for the Eastern District of Michigan, seeking a judgment vacating the Board's final award in favor of the Association.[2] On June 17, 2015, the district court granted the Association's motion for summary judgment and enforced the Board's final award. The court held that Brown's unilateral ruling on the procedural Board composition issue did not violate the majority-vote provision of the Act or the parties' Agreement. The court added that "[a]lternatively, even if the [Act] and/or [Agreement] required that the board composition issue be decided by majority vote, the lack thereof is harmless in light of Linn's signature on the final award." The court reasoned that the fact that Linn joined Brown in issuing the final award served as an "implicit acknowledgement that [Linn] deemed herself eligible to serve as a Board member." Spirit now appeals to this Court for reversal.

## II. Discussion

First, Spirit claims that Brown's unilateral resolution of the Board composition dispute violated the majority-vote provisions of the Agreement and the Act. *See* 45 U.S.C. § 153 First (n) ("A majority vote of all members . . . of the [Board] eligible to vote shall be competent to make an award."); R. 1-2, Page I.D. # 21 ("[d]ecisions of the Board . . . shall be by a majority vote and shall be final and binding on all parties").

---

[2] Spirit originally filed this suit in the United States District Court for the Northern District of Texas, but the court there granted the Association's motion, pursuant to 28 U.S.C. § 1404(a), to transfer the case to the Eastern District of Michigan.

Federal courts' review of an adjustment board's compliance with the Act is limited to:

> "three specific grounds: (1) failure of the [Board] to comply with the requirements of the Railway Labor Act; (2) failure of the [Board] to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption."

*Union Pac. Ry. Co. v. Sheehan*, 439 U.S. 89, 93 (1978) (citing 45 U.S.C. § 153 First (q)). We must be "exceedingly deferential" to an arbitrator's interpretation of a collective bargaining agreement and normally will consider only these three questions:

> "Did the arbitrator act outside his authority by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator arguably construing or applying the contract?"

*Mich. Fam. Resources v. Serv. Emp., Loc. 517M*, 475 F.3d 746, 753, 755 (6th Cir. 2007) (internal quotation marks omitted) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510 (2001); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). We review *de novo* the district court's grant of summary judgment to the Association under these deferential standards. *City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

After Brown resolved the Board composition dispute by continuing Linn on the Board, a majority of the Board — Brown and Linn — approved of Brown's unilateral resolution of the issue by voting in favor of the final award sustaining the Association's grievance. This approval is sufficient to comply with the majority-vote provisions of both the Agreement and the Act. *See Edwards v. United Parcel Serv., Inc.*, 99 F. App'x 658, 660-61 (6th Cir. 2004) (affirming the district court's conclusion that although the neutral arbitrator's award violated the majority-vote provision of the parties' collective bargaining agreement, the board corrected any violation by

approving the award in a subsequent vote). As the district court correctly found, the majority's approval of the final award endorsed Brown's prior preliminary decision because Linn could have easily expressed her disagreement with the preliminary decision by issuing her own separate final decision on the grievance or refusing to sit on the board or approve the final award. That Linn joined Brown in issuing a final award sustaining the Association's grievance is sufficient to demonstrate Linn's approval of Brown's unilateral decision to reinstate Linn to the Board.

Moreover, our finding is consistent with the Act's express purposes. 45 U.S.C. § 151a(4) ("The purposes of the chapter are to . . . provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions."); *see also International Ass'n of Machinists v. Central Airlines*, 372 U.S. 682, 689-90 (1963) (stating that the Act reflects a "steady congressional intent to move toward a reliable and effective system for the settlement of grievances"). Unfortunately, there has been nothing "prompt" about the attempted resolution of the underlying grievance in this case, which was filed more than five years ago. Simply put, a decision by this Court, to the effect that the majority-vote provision of the Act requires the parties to re-arbitrate the grievance in light of a dispute about a neutral arbitrator's preliminary decision, would ignore the "prompt and orderly" standard of the Act.

Spirit seeks to fend off this conclusion by claiming that even if Brown's unilateral decision did not violate the majority-vote provisions of the Act or the Agreement, the Board's award is still invalid because Brown's decision to continue Linn on the board after her retirement violated the eligibility provision of the parties' Agreement. Under *Michigan Family Resources'* "exceedingly deferential" standard of review, *Mich. Fam. Res.*, 475 F.3d at 755, we normally

consider whether the arbitrator has "arguably constru[ed] or appl[ied] the contact." *Misco, Inc.*, 484 U.S. at 38.

While "the arbitrator may not ignore the plain language of the contract . . . a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* In most cases, courts will find that the arbitrator was applying the contract and enforce the arbitrator's decision so long as "the arbitrator appeared to be engaged in interpretation, and if there is doubt [courts] will presume that the arbitrator was doing just that." *Mich. Fam. Res.*, 475 F.3d at 753 (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation. Co.*, 363 U.S. 574, 582-83 (1960)). Our Court, sitting en banc, has stated that "quotes from and analy[sis] [of] the pertinent provisions of the agreement," reliance on other indicators of meaning in the face of contractual silence, and a lack of any indication that the arbitrator was trying to do anything other than reach "a good-faith interpretation of the contract" are all "hallmarks" of an arbitrator's valid interpretation of an agreement. *Mich. Fam. Res.*, 475 F.3d at 754.

The parties' Agreement requires that "[a]ll Board Members, except the arbitrator, [] be full time [Spirit] employees." Spirit claims that Brown violated this provision by allowing Linn — a Spirit employee who had retired only *after* sitting on the Board during the arbitration hearing — to remain a member of the Board. When gauged under *Michigan Family Resources*' "exceedingly deferential" standard, we cannot say that Brown failed to "arguably constru[e] or appl[y]" the eligibility provision of the parties' Agreement. *Id.* at 753, 755. In fact, the provision is ambiguous as to whether an employee in Linn's position is eligible to sit on the Board because the provision does not indicate whether a Board member must be a full-time employee when the Board issues a final award. Moreover, Brown initially discussed and considered this provision of the Agreement with the parties during a conference call, and

determined in a subsequent letter that Linn was eligible to remain on the Board despite the fact that she had retired before the Board issued a final award. While Brown did not explicitly mention or interpret the Agreement in her two-page letter resolving Linn's eligibility, the record makes clear that Brown was aware of the Agreement's eligibility provision. Furthermore, neither Brown's letter nor the record indicates that Brown was "doing anything other than trying to reach a good-faith interpretation" of the Agreement. *Mich. Fam. Res.*, 475 F.3d at 754.

And while we do not reach the merits of the eligibility issue because the parties have contracted for arbitration, not a court's opinion, we briefly note that Brown's resolution of the eligibility issue seems reasonable for three reasons. First, if retirement disqualifies an employee from continuing to serve, older more experienced employees would be deterred from representing management or labor and many more arbitrations would need to be terminated and started over again — in the face of the sensible, overriding policy of prompt resolution. Second, it is normal and expected that the non-neutral representative will vote in favor of the interest she represents. Third, if retirement disqualifies an employee, it would open the door to gamesmanship retirement which could extend arbitration indefinitely at the behest of whichever side would benefit from the delay.

Finally, Spirit briefly argues that the eighteen-month delay between the hearing and the Board's issuance of the final award caused the Board to lose jurisdiction over the domestic partner benefits grievance because the parties' Agreement requires that "[d]ecisions of the Board shall be rendered within thirty (30) days after the close of the hearing." To support its claim, Spirit relies solely on *Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257, 265-66 (6th Cir. 1984), where we held that a board's fourteen-month delay between the hearing and the final award was clearly unreasonable when the parties' contract unequivocally required the board to

issue an award within fifteen days of the hearing. But Spirit's heavy reliance on *Jones* is misplaced. *Jones* involved a board's delay in issuing an award despite a party's numerous objections to the delay and the fact that the delay prejudiced that same party. *Id.* at 266. Conversely, the delay here occurred when Spirit itself objected to Brown's issuance of a "draft" award sustaining the Association's grievance. Unlike the prejudiced party in *Jones*, Spirit is primarily responsible for the delay in this case, and the Board's delay in sustaining the Association's grievance did not harm Spirit. *Id.* Therefore, Spirit cannot successfully argue that the delay has caused the Board to lose jurisdiction over the domestic partner health benefits grievance.

Accordingly, the judgment of the district court is **AFFIRMED**.